KAMALA D. HARRIS
Attorney General of California
RICHARD F. WOLFE
Supervising Deputy Attorney General
DOUGLAS E. BAXTER
Deputy Attorney General
State Bar No. 201351
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone:  (619) 645-2034
 Fax:          (619) 645-2012
 E-mail:  Douglas.Baxter@doj.ca.gov
*Attorneys for Defendant State of California*
*(by and through the California Highway*
*Patrol) and Sergio Flores*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACOB GREGOIRE,<br><br>              Plaintiff,<br><br>     v.<br><br>CALIFORNIA HIGHWAY PATROL, an agency of the State of California; SERGIO FLORES, and DOES 1 to 20,<br><br>              Defendants. | Case No.: 14-cv-01749-GPC (DHB)<br><br>**DECLARATION OF SERGIO FLORES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF CLAIMS**<br><br>Date:         January 29, 2016<br>Time:         1:30 p.m.<br>Courtroom: 2D<br>Judge:        The Honorable Gonzalo P. Curiel |

I, Sergio Flores, hereby declare as follows:

1. I am a Defendant in the above-entitled action. I am employed as a patrol officer for Defendant California Highway Patrol (CHP). I have been so employed since July 1994.

2. On February 4, 2014, I was on-duty for the C-watch, which runs from 5:00 p.m. to 5:30 a.m. During all events discussed in this declaration, I was wearing a

1

1  tan CHP uniform that bore CHP patches identifying me as a law enforcement
2  officer.
3       3. At approximately 9:30 p.m., I heard radio traffic regarding a traffic
4  collision on Interstate 805, just south of Telegraph Canyon Rd. At the time, I was
5  working on a traffic stop in the area of Interstate 8 and Texas Street in Mission
6  Valley. Once I cleared that traffic stop, I began heading southbound on the I-805. I
7  knew that the collision reported on the radio was located in my beat area, which
8  was the area on I-805 from State Route 94 to where the I-805 merges with the I-5
9  (near the Mexico border). Since the accident was on my beat, my intent was to
10 respond to the scene and take over the collision investigation. This was our normal
11 CHP practice – that the beat officer would handle the collision and function as the
12 traffic incident manager (often referred to as the Incident Commander).
13      4. As I neared the scene, I could see that traffic was backing up. I began a
14 traffic break to bring traffic approaching the accident scene in slowly. I came upon
15 a fire truck parked mostly in the number 1 lane and partially into the number 2 lane.
16 The number 1 lane is the lane closest to the center median. Where this fire truck
17 was stopped, there was a cement k-rail (also called Jersey wall) immediately butting
18 up against the east side of the southbound number 1 lane. This k-rail was there
19 because the center area of the I-805 was under construction. Thus, from the rear of
20 this fire truck and proceeding back (i.e., northbound) along the eastern edge of the
21 southbound I-805 for a substantial distance, there was cement k-rail abutting the
22 number 1 lane.
23      5. The fact that the fire truck was stopped blocking the number 1 lane and part
24 of the number 2 lane led me to believe that the accident was located in the number 1
25 lane in front of the fire truck. Therefore, I stopped my patrol vehicle approximately
26 100 feet behind this fire truck. I exited my vehicle and proceeded to lay a flare
27 pattern on the road proceeding from the rear of my vehicle and in a diagonal pattern
28 moving southbound toward the number 2 lane.

2

DECLARATION OF SERGIO FLORES IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (14-cv-01749-GPC (DHB))

6. As I moved my flare pattern close to the fire truck, I saw that the actual collision scene was to my left in the construction area. It was between cement k-rails that blocked off a large construction area between the northbound and southbound lanes. Thus, it was not located in any traffic lanes. I saw fire personnel, paramedics, and at least one of the people who had been involved in the collision near the vehicle in this center area. I could see that the collision had occurred on the northbound side and that the vehicle had come to rest in the construction area. I saw paramedics providing medical care to the occupants.

7. Very soon after completing my flare pattern, I saw CHP Officer Eliazar Colunga (who had arrived on scene before me) speaking to a group of firefighters. I heard Officer Colunga asking the group who their Fire Captain was and why they had not yet moved their fire engine. I heard Officer Colunga say that he had told them several times that they needed to move the fire engine. I heard someone I believed to be the Fire Captain state their truck was there to protect the scene. I heard Officer Colunga explain that the collision scene was safely within the construction area and that the truck was not providing protection.

8. Based on my training and experience and my personal observations of the scene, I formed the conclusion that having fire trucks parked in lanes was not necessary to protect the scene. Instead, based on my training and experience with having responded to and investigated multiple traffic collisions, I formed the belief that the fire truck was presenting an unnecessary risk to the public. We are trained as CHP Officers that part of our role in managing traffic scenes is to make sure that the placement of vehicles and equipment is done in such a way as to prevent the serious problem of secondary automobile accidents. These are accidents that occur due to the motoring public's surprise and confusion resulting from suddenly encountering lane blockages from emergency equipment in roadways at accident scenes. This is a particular risk on freeways, where traffic can come upon accident

3

1  scenes at high speeds. Clearing lanes at traffic scenes to protect the public is a key
2  part of our responsibilities as traffic incident managers at the CHP.
3       9. CHP Officers are responsible for managing the entire scene to protect the
4  safety of the people present at the scene and the motoring public near the scene. In
5  this particular case, the ambulance which had responded to treat the patients was
6  parked in the center median area and out of traffic lanes. I realized that the
7  collision did not occur in any southbound lanes, so there was no debris field in any
8  southbound lanes. These were was my perceptions of the scene at the time I was
9  hearing the discussion between Officer Colunga and the firefighters. I believed that
10 having fire trucks parked in lanes was posing a serious risk to the public and that
11 this was not needed to protect the accident scene (which was fully shielded in a
12 large center construction area by cement k-rail walls). The truck I was trying to get
13 moved was on the I-805, which is a freeway on which people commonly travel at
14 high speeds. I was concerned about vehicles approaching from the north at high
15 speeds and unexpectedly coming upon stopped emergency vehicles without time to
16 react. I was concerned about secondary accidents occurring and additional people
17 getting injured or killed.
18      10. Since this was my accident scene, I assumed the role of managing the
19 incident scene upon my arrival. In connection with that role, I believed any fire
20 trucks needed to be moved out of lanes for protection of the motoring public. I
21 spoke to a person I believed to be a Fire Captain. I stated that his fire truck was just
22 blocking lanes and was not providing any kind of protection. I tried to get him to
23 move his fire truck. He refused and walked away from me. I then called out to the
24 group of other fire fighters and asked who was driving the truck. The Engineer
25 (later identified as Jacob Gregoire) said that he was. I directed him to move the fire
26 truck. He said he was not going to move it. I told him that I was giving him a
27 direct order to move his fire truck because I believed it was causing a hazard.
28 Despite repeating my direction to move his truck, Engineer Gregoire continued to

4

1  state that he would not move it. I then stated that, if he did not move the truck, I
2  was going to arrest him for disobeying an order and for delaying us in our
3  investigation. Engineer Gregoire told me to go ahead and arrest him. He refused to
4  move the fire truck.

5       11. At this time, I believed Engineer Gregoire was capable of driving the fire
6  truck, that he was the driver of the fire truck, that I had given him an order to move
7  the truck pursuant to my duties to manage the traffic scene for public safety, that he
8  was refusing to comply with that order despite several requests, that I had warned
9  him that he would be arrested if he did not comply, and that he still continued to
10 refuse to comply. Therefore, I formed a belief that he was in violation of California
11 Penal Code §148(a) and California Vehicle Code § 2800(a) for failure to follow my
12 orders and for hindering/delaying my management and investigation of the accident
13 scene. Accordingly, I directed Engineer Gregoire to step over a k-rail (this
14 particular k-rail was a third k-rail that was between the two k-rails on the
15 northbound and southbound sides of the center portion of I-805). He stepped over
16 the k-rail, and I placed him under arrest. I placed handcuffs on his wrists and
17 walked him back to my patrol car. In the course of searching Engineer Gregoire
18 before placing him in the patrol car, I double-locked the handcuffs. The point of
19 double locking handcuffs is to prevent the handcuffs from tightening. At no point
20 did I intentionally tighten handcuffs on Engineer Gregoire.

21      12. Attached herewith as Exhibit A is a photograph that fairly and accurately
22 depicts a portion of the scene at the moment just after Engineer Gregoire had
23 stepped over the center k-rail to walk towards me to be placed under arrest. The
24 photograph shows a view from the vantage point of someone facing northward in
25 the center construction area. In the forefront of the picture, Engineer Gregoire is
26 shown in a yellow firefighter's uniform. I am shown immediately behind Engineer
27 Gregoire in the photo. I am just to the west of his position. In this photograph, one
28 can see that the southbound lanes are on the left side of the photograph. The

1  cement k-rail at the left of the photograph (west of where Engineer Gregoire and I
2  are shown) is the one that ran between the construction area and the number 1 lane
3  of the southbound lanes. Looking at the photo, one sees another cement k-rail to
4  the east of where Engineer Gregoire and I are standing. This is another k-rail that
5  runs through the center of the construction area. The accident scene was to the east
6  of that k-rail.

7  13. Attached herewith as Exhibit B is another photograph that fairly and
8  accurately depicts the scene just before Engineer was about to step over the center
9  k-rail to be arrested. This photograph also shows a view from the vantage point of
10 someone facing northward in the center construction area. In this photo, one can
11 see the accident scene, with the rollover vehicle, fire personnel, another CHP
12 officer, paramedics, and one injured person. To the right (east) of the vehicle is the
13 third cement k-rail. This is the one that ran between the construction area and the
14 number 1 lane of the northbound lanes of I-805.

15 14. At no time while I was on the scene did I see Engineer Gregoire engaging
16 in any actions that I perceived to be patient care. Instead, he appeared to me to be
17 standing with a group of other firefighters while others were actually treating the
18 patients. Prior to ordering him to move his fire truck, I was already aware that the
19 two patients were being taken care of by paramedics from an ambulance. Other fire
20 fighters were on the scene, and I perceived no reason why Engineer Gregoire could
21 not move his fire truck out of lanes. I believed that the patients were being cared
22 for and that his fire truck was posing an unnecessary risk to public safety. There
23 was no indication to me that Engineer Gregoire was engaged in any fire suppression
24 activities. I did not perceive any signs of risk of fire at the scene so as to require the
25 truck to stay in its location. My purpose in ordering Engineer Gregoire to move the
26 fire truck was to eliminate the risk I believed it was posing to public safety.

27 15. Engineer Gregoire remained in custody in my vehicle for approximately
28 30 minutes. After that point, CHP Sergeant Nicole Pacheco (who had arrived after

the arrest) instructed me to release Engineer Gregoire. She asked that I proceed by way of a criminal complaint to be filed.

16. I then released Engineer Gregoire from custody without booking. I later completed my report of the arrest with a recommendation that criminal charges be filed.

I, Sergio Flores, affirm under penalty of perjury under the laws of the State of California and of the United States that the foregoing information is true and correct of my own knowledge and that this declaration is being executed on this 18TH day of November 2015 at San Diego, California.

_____
Sergio Flores

SD2014707454
81197635.doc

7

DECLARATION OF SERGIO FLORES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION (14-cv-01749-GPC (DHB))

# EXHIBIT A



**EXHIBIT B**

