1  Daniel M. Gilleon (SBN 195200)
   Steve Hoffman (SBN 237466)
2  The Gilleon Law Firm
   1320 Columbia Street, Suite 200
3  San Diego, CA 92101
   Tel: 619.702.8623/Fax: 619.702.6337
4
5  Thomas D. Luneau (SBN 145804)
   Casey Gerry Schenk Francavilla Blatt & Penfield
6  110 Laurel St
   San Diego, CA 92101
   Tel: 619.328.1811/Fax: 619.544.9232
7
8  Attorneys for Plaintiff Jacob Gregoire

9               UNITED STATES DISTRICT COURT

10        FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  JACOB GREGOIRE, | **CASE NO. 17-CV-01749 GPC (DHB)** |
| 13                   Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION** |
| 14       vs. | **TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR, IN** |
| 15  CALIFORNIA HIGHWAY | **THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS** |
| PATROL, an agency of the State | |
| 16  of California; SERGIO FLORES; | **DATE:    February 19, 2016** |
| and DOES 1 to 20, | **TIME:    1:30 p.m.** |
| 17                   Defendants. | **PLACE: Courtroom 2D** |
| 18  _____ | **The Honorable Gonzalo P. Curiel** |

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**TABLE OF CONTENTS**

2
INTRODUCTION AND SUMMARY
OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3
STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4
I.     THE ARREST OF FIREFIGHTER GREGOIRE
5      WAS NOT SUPPORTED BY PROBABLE
       CAUSE BECAUSE FLORES' ORDER WAS
6      NOT A LAWFUL ORDER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7             A.     FLORES' ORDER TO GET IN THE FIRE
                     TRUCK AND GO BACK TO THE FIRE
8                    STATION WAS UNLAWFUL BECAUSE
                     THE PARAMEDICS HAD AUTHORITY
9                    FOR PATIENT CARE AT THE SCENE
                     AND GREGOIRE WAS NEEDED TO
10                   ASSIST WITH PATIENT CARE. . . . . . . . . . . . . . . . . . . . . . . 5

11            B.     THE FACTS KNOWN TO OFFICER
                     COLUNGA ARE NOT RELEVANT TO THE
12                   PROBABLE CAUSE ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . 8

13            C.     THE FACTUAL DISPUTES PRECLUDE
                     SUMMARY JUDGMENT ON PLAINTIFF'S
14                   UNLAWFUL SEIZURE CLAIMS. . . . . . . . . . . . . . . . . . . . . . . 9

15
II.    FLORES IS NOT ENTITLED TO QUALIFIED
16     IMMUNITY FOR THE UNLAWFUL ARREST. . . . . . . . . . . . . . . . . . 9

17            A.     GREGOIRE'S RIGHT AS AN EMT TO
                     BE FREE FROM UNLAWFUL ARREST
18                   WHILE ENGAGED IN PATIENT CARE
                     AT AN EMERGENCY IS CLEARLY
19                   ESTABLISHED BY STATUTE. . . . . . . . . . . . . . . . . . . . . . . . 11

20            B.     FLORES IS NOT ENTITLED TO QUALIFIED
                     IMMUNITY BECAUSE THE ARREST WAS
21                   NOT REASONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

22
III.   THE FACTUAL DISPUTES PRECLUDE
23     SUMMARY JUDGMENT ON PLAINTIFF'S
       EXCESSIVE FORCE CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

24
IV.    FLORES VIOLATED CALIFORNIA CIVIL CODE
25     SECTION 52.1 BECAUSE THERE WAS NO
       PROBABLE CAUSE FOR THE ARREST.. . . . . . . . . . . . . . . . . . . . . . .14

26
V.     THE FACTUAL DISPUTES PRECLUDE SUMMARY
27      JUDGMENT ON PLAINTIFF'S BATTERY CLAIM. . . . . . . . . . . . . . .14

28     / / /

VI.  FLORES IS LIABLE FOR FALSE
     IMPRISONMENT BECAUSE THERE WAS NO
       PROBABLE CAUSE FOR THE ARREST........................... 15

VII.  THE FACTS SHOW THAT FLORES ENGAGED
       IN OUTRAGEOUS CONDUCT.................................15

VIII.  THE STATE (CHP) WAIVED IMMUNITY BY
        REMOVING THE CASE TO FEDERAL COURT.................... 15

1

# TABLE OF AUTHORITIES

2

3

**Cases**                                                                                   **Page**

*Acosta v. City & Cnty. of San Francisco,*
    83F.3d 1143, 1147-48 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Baldwin v. Placer County,*
    418 F.3d 966, 970 (9th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Boyd v. Benton Cnty.,*
    374 F.3d 773, 781 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Demuth v. County of Los Angeles,*
    No. 12-57197 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Deorle v. Rutherford,*
    272 F.3d 1272, 1286 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dubner v. City & Cnty. of S.F.,*
    266 F.3d 959, 964 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Embury v. King,*
    361 F. 3d 562, 566 (9th Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fontana v. Haskins,*
    262 F.3d 871, 880 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Garcia v. Superior Court,*
    177 Cal. App. 4th 803, 818 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Harlow v. Fitzgerald,*
    457 US 800, 818 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Harper v. City of Los Angeles,*
    533 F.3d 1010, 1022 (9th Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hayes v. County of San Diego,*
    736 F. 3d 1223, 1232 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Headwaters Forest Def. v. County of Humboldt,*
    240 F.3d 1185, 1199 (9 Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Manuel G.,*
    16 Cal. 4th 805, 815 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Johnson v. Bay Area Rapid Transit Dist,* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    724 F. 3d 1159, 1173, 1178 (2013)

*Lacey v. Maricopa Cnty.,*
    693 F.3d 896, 918 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*LaLonde v. County of Riverside,*
    203 F.3d 947, 960 (9th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Liston v. County of Riverside,*
    120 F.3d 965, 976 n. 10 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Matsushita Electric Indus. Co., Ltd. V. Zenith Raido Corp.,*
    475 U. S. 574, 586, (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Maxwell v. Cnty. of San Diego,*
    708 F.3d 1075, 1086 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McKenzie v. Lamb,*
    738 F.2d 1005,1008 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moreno v. Baca,*
    431 F.3d 633, 642 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Palmer v.Sanderson,*
    9 F.3d 1433, 1436 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pearson v. Callahan,*
    555 U.S. 223, 236 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*People v. Gonzalez,*
    51 Cal.3d 1179, 1217 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*People v. Ritter,*
    (1980) 115 Cal.App.3d Supp. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ramirez v. City of Buena Park,*
    560 F.3d 1012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Rosenbaum v. Washoe County,*
    663 F.3d 1071, 1076 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Santos v. Gates,*
    287 F.3d 846, 854 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Saucier v. Katz,*
    533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Smith v. City of Hemet,*
    394 F.3d 689, 695 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sorrels v. McKee,*
    290 F.3d 965, 970 (9th Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Tarabochia v. Adkins,*
    766 F. 3d 1115, 1127 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Patayan Soriano,*
    361 F.3d 494, 505 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Velazquez v. City of Long Beach,*
    793 F. 3d 1010, 1018 (9th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Wall v. Cnty. of Orange*,
        364 F.3d 1107, 1109-10, 1112 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 13

*Wilson v. City of Hazelwood*,
        628 F. Supp. 2d 1063 (Dist. Court, ED Missouri 2008) . . . . . . . . . . . . . . 12

**Statutes**

California Health and Safety Code § 1798.6 . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7

California Penal Code § 148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 5, 7, 11

California Penal Code § 409.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 9

California Vehicle Code § 620 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

California Vehicle Code § 2410 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8

California Vehicle Code § 2800 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

California Vehicle Code § 2801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

California Vehicle Code § 21055 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11

# INTRODUCTION AND SUMMARY OF ARGUMENT

Firefighter/Emergency Medical Technician (EMT) Jacob Gregoire, Plaintiff, was arrested by Defendant California Highway Patrol (CHP) Officer Sergio Flores, while Gregoire was actively engaged in a rescue operation and assisting in the treatment  of patients who had been injured in a rollover crash on Interstate 805. Flores placed Gregoire under arrest for failing to obey Flores' unlawful order for Gregoire to cease patient care and return to the fire station.

Flores arrived on the scene well after the firefighters, EMTs, paramedics and another CHP officer arrived on the scene. Gregoire was actively involved in patient care with one of two injured vehicle occupants. Flores did not consult with the medical personnel on the scene when he arrived, nor did he assess the patients. His first order of business upon arriving on the scene was to order Gregoire to get in his truck and leave. When Gregoire told Flores that he was helping the patients, Flores responded that he "did not care about the patients" and ordered Gregoire to leave or be arrested. Gregoire told him that he could not move the truck, and Flores arrested him.

Flores did not have probable cause to arrest Gregoire for a violation of Penal Code § 148(a)(1) or Vehicle Code § 2800(a) because Flores' order for Gregoire to cease assisting with patient care and get in the fire truck and return to the fire station was unlawful. Flores himself violated California Penal Code § 148(a), which makes it a misdemeanor to resist, obstruct or delay an EMT in the discharge or attempt to discharge their duties. Flores also violated the code sections on which Defendants rely to justify the arrest, California Penal Code § 409.3 and California Health and Safety Code § 1798.6, both of which require that law enforcement representatives at the scene of an accident consult with emergency medical services personnel and representatives of other response agencies in the management of the scene and the determination of risks to health and safety.  Those two sections also clearly assign authority for patient care management to the most medically qualified licensed health

1   care professional at the scene of the emergency, in this case the paramedics.

2       Defendants also rely on California Vehicle Code § 2410, which gives members

3   of the CHP authority to direct traffic. This authority does not extend, however, to

4   arresting firefighters and EMTs in the performance of their duties at an accident scene

5   for at least two reasons: 1) A fire truck parked at the scene of an emergency with

6   personnel engaged in rescue operations is not defined as "traffic" under California

7   Vehicle Code § 620, and firefighters who are driving emergency vehicles in response

8   to an emergency call are exempt from nearly all rules of the road (with the exception

9   of drug and alcohol related driving offenses).

10      Flores is not entitled to qualified immunity for the unlawful arrest, because the

11  statutory authority is so obvious and so well established, it would be clear to any

12  reasonable officer that arresting a firefighter/EMT engaged in patient care at the scene

13  of a serious vehicle accident for not immediately moving an emergency vehicle would

14  be unlawful.

15      Flores also handcuffed Gregoire and held him in the back of his patrol vehicle

16  for 30 minutes. When Gregoire asked Flores to loosen the handcuffs, Flores tightened

17  them. Defendants argue that Flores is entitled to qualified immunity because Gregoire

18  didn't tell Flores he was in pain when he asked him to loosen the handcuffs (twice)

19  and because there was no permanent injuries. Flores is not entitled to qualified

20  immunity at the summary judgment stage because of the factual dispute regarding the

21  tightening of the handcuffs and because whether the force used was reasonable is a

22  question for the jury.

23      Defendants arguments regarding Plaintiff's third through sixth cause of action

24  fail for the same reasons stated above.

25  / / /

26  / / /

27  / / /

28

**STATEMENT OF FACTS**

On February 4, 2014, at about 10 p.m., a serious motor vehicle accident occurred on I-805 in Chula Vista.  (Plaintiff's Separate Statement of Undisputed Material Facts in Opposition to Defendants' Motion for Summary Judgment, or in the Alternative, Summary Adjudication [hereafter SSUMF], Fact 8) Chula Vista Fire Engine 52 (E52), being driven by Engineer/EMT Jacob Gregoire, arrived at the accident scene at which time Captain David Albright on E52 established Incident Command.  (SSUMF, Facts 10, 20.) In addition to Gregoire and Capt. Albright, Firefighter/EMT Joshua Rees was on board E52. (SSUMF, Fact 20.) An ambulance from AMR was already on scene, and was parked so that at least part of the ambulance protruded into the number 1 lane. (SSUMF, Fact 15.)  In order to protect the ambulance, its personnel and the patients, Gregoire parked E52 behind the ambulance in the number 1 lane, pursuant to standard operating procedure and the instructions of Albright. (SSUMF, Fact 20.) Two more fire engines, E54 and E6, arrived and parked behind E52. (SSUMF, Fact 21.)

At some point, CHP Officer Colunga, without consulting with any of the emergency medical personnel who were treating the patients, asked E54 and E6 to leave the scene. Both crews left. (SSUMF, Fact 24.)    All the while, the two paramedics from AMR, along with Rees and Gregoire were caring for the injured patients from the wrecked vehicle. (SSUMF, Facts 93,94.)

CHP Officer Sergio Flores then arrived and parked his own cruiser behind the fire trucks. (SSUMF, Fact 56.)  Flores set out a flare pattern to block the number one lane. (SSUMF, Fact 56.) He then approached the firefighters and, without consulting anyone as to the status of patient care, yelled at Gregoire to move the engine.(SSUMF, Facts 61, 80.)  Gregoire told Flores that he was helping the patients and they could not move it at that time. (SSUMF, Fact 83.)  Flores responded that the patients "were not his problem" and that he wanted all the fire engines gone and back at their stations. (SSUMF, Facts 82-87.) Flores told Gregoire to move the engine or be

arrested. Gregoire responded again that he could not move it at that time, and Flores placed Gregoire in handcuffs and arrested him.  (SSUMF, Facts 90-92.)

Gregoire asked Flores to loosen the handcuffs, Flores responded by tightening them. (SSUMF, Facts 102-104.)  When Gregoire asked a second time if the handcuffs could be loosened because they were causing pain to both his wrists and shoulder, Flores ignored  him and placed him in his patrol vehicle.(SSUMF, Facts 102-104.) Gregoire was detained in Flores' patrol vehicle for approximately 30 minutes until Flores was ordered by his supervisor to release Gregoire.(SSUMF, Fact 116.)

### I.   THE ARREST OF FIREFIGHTER GREGOIRE WAS NOT SUPPORTED BY PROBABLE CAUSE BECAUSE FLORES' ORDER WAS NOT A LAWFUL ORDER.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 918 (9th Cir. 2012) (quoting *Dubner v. City & Cnty. of S.F.*, 266 F.3d 959, 964 (9th Cir. 2001)). "Probable cause exists when there is a fair probability or substantial chance of criminal activity." *United States v. Patayan Soriano*, 361 F.3d 494, 505 (9th Cir. 2004). "[T]he determination of probable cause is based upon the totality of the circumstances known to the officers at the time" of the arrest. *Id.*

In determining whether probable cause to arrest exists, the elements of the asserted crime for which the arrest took place must be considered. *Velazquez v. City of Long Beach*, 793 F. 3d 1010, 1018 (9th Cir. 2015). The elements of the first asserted crime in this case, a violation of Penal Code § 148(a)(1), are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Id.* (quoting *Garcia v. Superior Court*, 177 Cal. App. 4th 803, 818 (2009) (internal quotation marks omitted).

"For a section 148(a)(1) conviction to be valid, a criminal defendant must have

'resist[ed], delay[ed], or obstruct[ed]' a police officer in the lawful exercise of his duties." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (alterations in original). "The longstanding rule in California . . . is that a defendant cannot be convicted of an offense against a peace officer 'engaged in . . . the performance of . . . [his or her] duties' unless the officer was acting lawfully at the time the offense against the officer was committed." *In re Manuel G.*, 16 Cal. 4th 805, 815 (1997) (alteration in original) (quoting *People v. Gonzalez*, 51 Cal.3d 1179, 1217 (1990)). "Consequently, 'Section 148(a) does not make it a crime . . . to resist unlawful orders.'" *Velazquez,*793 F.3d at 1018-1019. (quoting *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013).

The second crime Defendants assert is California Vehicle Code § 2800. "[T]he express language of section 2800, authorizing traffic officers to make 'an order, signal, or direction' the disobedience of which is illegal, is limited to lawful orders, willfully disregarded or disobeyed." *People v. Ritter* (1980) 115 Cal.App.3d Supp. 1, 6. A "'lawful order' [is] a reasonable order made by a traffic officer which is reasonably necessary to aid him in the performance of his duty to enforce 'the rules of the road.'" *Id*. at p. 4. Probable cause for an arrest under either Penal Code § 148(a)(1) or under Vehicle Code 2800 is only established if the order is lawful.

**A. FLORES' ORDER TO GET IN THE FIRE TRUCK AND GO BACK TO THE FIRE STATION WAS UNLAWFUL BECAUSE THE PARAMEDICS HAD AUTHORITY FOR PATIENT CARE AT THE SCENE AND GREGOIRE WAS NEEDED TO ASSIST WITH PATIENT CARE.**

As Defendants point out, California Penal Code § 409.3 delegates the duties and assigns authority at the scene of an accident:

> Whenever law enforcement officers and emergency medical technicians are at the scene of an accident, management of the scene of the accident shall be vested in the appropriate law enforcement agency, *whose representative shall consult with representatives of other response agencies at the scene* to ensure that all appropriate resources are properly utilized. *However, authority for patient care management at the scene of an accident shall be determined in accordance with Section*

*1798.6 of the Health and Safety Code.*

> For purposes of this section, "management of the scene of an accident" means the coordination of operations which occur at the location of an accident. (emphasis added).

Defendants' position is that Flores had complete authority to order the emergency medical personnel and the firefighters to stop patient care and do what he thought was best using solely his own judgment. However, under California Health & Safety Code § 1798.6(a), patient care management at the scene of an accident is "vested in that licensed or certified health care professional, which may include any paramedic or other pre-hospital emergency personnel, at the scene of the emergency who is most medically qualified specific to the provision of rendering emergency medical care." Cal. Health & Safety Code § 1798.6(a).

Flores had no authority to take over or otherwise interfere with patient care management and begin to give orders to those medically trained professionals. Flores had not consulted with any of the paramedics, emergency medical technician or anyone else regarding what was needed for proper care of the patients, as required by section 1798.6(a). (SSUMF, Fact 61.) Flores did not even know how many people were injured. (SSUMF, Fact 95.) When Gregoire asked Flores what he was going to do about the patients, Flores responded that "he did not care about the patients." (Mitchell Decl., p. 2 ¶ 8, Hutton decl. p. 2 ¶ 7. )

Defendants cite Flores' belief that the fire truck was "creating a serious risk of causing secondary accidents," as one of the circumstances that justified his interference with the immediate patient care. California Health & Safety Code § 1798.6(c)addresses how these relative risks at an emergency are to be managed (emphasis added):

> (c)   Notwithstanding subdivision (a), authority for the management of the scene of an emergency shall be vested in the appropriate public safety agency having primary investigative authority. ***The scene of an emergency shall be managed in a manner designed to minimize the risk of death or health impairment to the patient*** and to other persons who may be exposed to the risks as a result of the

emergency condition, ***and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health***. Public safety officials shall consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks. (emphasis added).

The decision to move the fire truck was not Flores' to make. He was required to consult with the emergency medical services personnel at the scene regarding the relative risks, which he did not. Even if he had, section 1798.6(c) places priority upon the more immediate risks to life and health, the patients being treated at the scene, not the risk of secondary accidents. Flores did not check with the fire Captain to determine if the fire truck was parked where it was for a reason. (SSUMF, Fact 18.) Flores simply walked upon the scene, assumed he was in charge, and without any investigation, without consulting with representatives from other responding agencies, and without even consulting with other CHP officers who had been on the scene before him, ordered Gregoire to stop assisting with patient care and move the fire truck.

Flores' order was unlawful not only because he failed to consult with the medical providers and other responders regarding patient care and relative risks, as required, but also because he was actually violating the very same code sections that Defendants use to justify the arrest. Flores himself violated Penal Code § 148(a) by delaying Gregoire. That section provides that "[a]ny person who willfully resists, delays, or obstructs any public officer, peace officer, or an *emergency medical technician*. . . . in the discharge or attempt to discharge any duty of his or her office or employment" is guilty of a misdemeanor. Pen. Code § 148(a)(1). (emphasis added).

Likewise, Flores also violated California Vehicle Code § 2801, which provides:

It is unlawful to wilfully fail or refuse to comply with any lawful order, signal, or direction of any member of any fire department, paid, volunteer, or company operated, when wearing the badge or insignia of a fireman and when in the course of his duties he is protecting the personnel and fire department equipment.

By ordering that the fire truck be moved, Flores was, in essence, refusing to comply with the firefighters directions.

Defendants also take the position that Flores had authority to order Gregoire to cease patient care and go back to the fire station pursuant to the CHP's authority to direct traffic pursuant to California Vehicle Code § 2410. This is clearly erroneous for two reasons: 1) a fire truck parked on a highway while engaged in rescue operations at the scene of an emergency is not a vehicle "using a highway for the purpose of travel", and therefore does not fall under the definition of "traffic" under California Vehicle Code § 620; and 2) firefighters are exempt from nearly all Vehicle Code rules of the road (with the exception of drug and alcohol related rules) "while engaged in rescue operations....and the vehicle displays a lighted red lamp." California Vehicle Code § 21055.

## B. THE FACTS KNOWN TO OFFICER COLUNGA ARE NOT RELEVANT TO THE PROBABLE CAUSE ANALYSIS.

To bolster the "totality of the circumstances" known to Flores when he made the arrest, Defendants point to many of CHP officer Colunga's observations as well. While none of Colunga's observations or conclusions support probable cause or otherwise justify the arrest, they are irrelevant nonetheless.

Information in the possession of other officers will not justify a detention unless the officer detaining the suspect knows of the information. *Moreno v. Baca,* 431 F.3d 633, 642 (9th Cir. 2005) (it is clearly established that the facts upon which the reasonableness of a search or seizure depends must be known to the officer at the time the search or seizure is conducted.)

Defendants do not assert that Flores ever communicated with Colunga during the entire incident leading up to Gregoire's arrest. Therefore, any of Colunga's observations or conclusions are irrelevant.

## C. THE FACTUAL DISPUTES PRECLUDE SUMMARY

**JUDGMENT ON PLAINTIFF'S UNLAWFUL SEIZURE CLAIMS.**

Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir.2008) (quoting *McKenzie v. Lamb*, 738 F.2d 1005,1008 (9th Cir. 1984)). See *Velazquez*, supra,

Defendants make a perfunctory argument that Gregoire had no role in patient care. However, the paramedics on the scene and Gregoire state that he was actively involved in patient care. (SSUMF Facts 93, 94.) There is also a dispute about exactly what order Flores gave and what exactly Flores said to Gregoire prior to the arrest. Defendants also dispute that the ambulance was in the lane of traffic. The parties dispute several critical facts.

On summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co., Ltd. v. Zenith Raido Corp.,* 475 U. S. 574, 586, (1986). Thus, resolving the disputes in Plaintiffs favor, a jury could conclude that Flores lacked probable cause to arrest Gregoire.

## II.    FLORES IS NOT ENTITLED TO QUALIFIED IMMUNITY FOR THE UNLAWFUL ARREST.

Defendants take the position that Flores is entitled to qualified immunity because his "conclusion regarding probable cause was objectively reasonable, and Plaintiff cannot point to any well-established body of law stating that Officer Flores' exercise of authority under California Vehicle Code section 2410, California Penal Code section 409.3 and California Health and Safety Code section 1798.6 was unlawful under the circumstances he confronted."

In *Saucier*, the Supreme Court established a two-prong analysis for qualified immunity cases. *Saucier v. Katz,* 533 U.S. 194 (2001). In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), however, the Supreme Court held that this two-step inquiry is

no longer "an inflexible requirement," explaining "that, while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory. " Thus, it is within a trial court's "sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

In *Ramirez v. City of Buena Park*, the Ninth Circuit reiterated the two-step analysis as follows:

> Under *Saucier's* first prong, we consider whether, "[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Where disputed issues of fact remain, we view the facts in the light most favorable to Ramirez, the non-moving party. See *Beier v. City of Lewiston*, 354 F.3d 1058, 1063 (9th Cir.2004). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201.

> Under *Saucier's* second prong, we ask "whether the right was clearly established." *Id.* To be "clearly established," the " 'contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Id.* at 202, 121 S.Ct. 2151 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The dispositive inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* "If the officer's mistake as to what the law requires is reasonable, ... the officer is entitled to the immunity defense." *Id.* at 205.

*Ramirez v. City of Buena Park*, 560 F.3d 1012, 1020 (9th Cir. 2009).

"In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest - that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe County,* 663 F.3d 1071, 1076 (9th Cir. 2011).

1

2

### A. GREGOIRE'S RIGHT AS AN EMT TO BE FREE FROM UNLAWFUL ARREST WHILE ENGAGED IN PATIENT CARE AT AN EMERGENCY IS CLEARLY ESTABLISHED BY STATUTE.

3

4

Officers are only shielded by qualified immunity if their "conduct does

5

not violate clearly established *statutory* or constitutional rights of which a reasonable

6

person would have known." *Harlow v. Fitzgerald*, 457 US 800, 818 (1982) (emphasis

7

added). "Where an official could be expected to know that certain conduct would

8

violate statutory or constitutional rights, he should be made to hesitate; and a person

9

who suffers injury caused by such conduct may have a cause of action." *Id.* at 819.

10

As stated above, the very statutory law that Defendants rely on to justify

11

the warrantless arrest of Gregoire *clearly prohibit* Flores' actions. See Penal Code §

12

148(a)(1), Vehicle Code § 2801(a). Further, firefighters are statutorily exempt from

13

the rules of the road while on duty and engaged in rescue operations. Cal. Veh. Code

14

§ 21055. Nowhere in any of these code sections is there an exemption (other that drug

15

and alcohol driving offenses) giving law enforcement the right to obstruct or delay an

16

EMT in the performance of his duties or to otherwise arrest a firefighter during a

17

rescue operation. (See *Tarabochia v. Adkins*, 766 F. 3d 1115, 1127 (9th Cir. 2014)

18

holding that a reasonable officer would recognize that a suspicionless stop of a vehicle

19

exceeded the bounds of the statutes the Defendant purportedly relied on because the

20

statutes did not mention stopping or searching vehicles.)

21

While no published case in the 9th Circuit has yet been found that holds

22

arresting an emergency medical technician who is engaged in patient care for failing

23

to immediately move an emergency vehicle is unlawful, the 9th Circuit has denied

24

qualified immunity for an arrest under Penal Code section 148(a)(1) because the

25

officer lacked probable cause. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F. 3d

26

1159, 1173, 1178. (9th Cir. 2013).

27

In the absence of binding precedent clearly establishing the constitutional

28

right, "we look to whatever decisional law is available . . . including decisions of state

1    courts, other circuits, and district courts." *Boyd v. Benton Cnty*., 374 F.3d 773, 781

2    (9th Cir. 2004) (internal quotation marks omitted).

3              In *Wilson v. City of Hazelwood*, 628 F. Supp. 2d 1063 (Dist. Court, ED

4    Missouri 2008) a jury found an officer liable for violating a firefighters constitutional

5    right to be free from unreasonable seizures in a case with very similar facts. The court

6    also denied the officer qualified immunity, leaving the reasonableness of the officer's

7    actions to the jury.

8              Despite the numerous interactions between firefighters and law

9    enforcement at accident scenes on a daily basis, there is very little case law regarding

10   firefighters being arrested while engaged in rescue operations. This is because it

11   obvious to any reasonable law enforcement officer that it would be an unlawful arrest.

12   "Closely analogous preexisting case law is not required to show that a right was

13   clearly established. In other words, while there may be no published cases holding

14   similar policies constitutional, this may be due more to the obviousness of the

15   illegality than the novelty of the legal issue." *Sorrels v. McKee*, 290 F.3d 965, 970

16   (9th Cir.2002). "[W]hen an officer's conduct `is so patently violative of the

17   constitutional right that reasonable officials would know without guidance from the

18   courts that the action was unconstitutional, closely analogous pre-existing case law is

19   not required to show that the law is clearly established.'" *Boyd v. Benton County*, 374

20   F.3d 773, 781 (9th Cir.2004) (quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1286 (9th

21   Cir.2001)).

22

23              **B.      FLORES IS NOT ENTITLED TO QUALIFIED IMMUNITY
                          BECAUSE THE ARREST WAS NOT REASONABLE.**

24              "[O]fficials can still be on notice that their conduct violates established

25   law even in novel factual circumstances. This is especially true in the Fourth

26   Amendment context, where the constitutional standard— reasonableness—is always

27   a very fact specific inquiry." *Demuth v. County of Los Angeles*, No. 12-57197 (9th Cir.

28   2015)  (quotation marks and citations omitted).

1         Here, no other officer at the scene arrested Gregoire. (Clark dec. p. 5, ¶

2   21.)  When Flores' supervisor arrived on the scene, she immediately ordered Flores

3   to release Gregoire. (Clark dec. p. 5, ¶ 22.) Gregoire was never cited and the District

4   Attorney's office never filed charges against him.  (Clark dec. p. 5, ¶ 23,24.)

5         As stated above in section I(C), there are several disputed underlying

6   facts that must be determined before a decision can be made on qualified immunity

7   based on the reasonableness of Flores' actions. Regardless of who makes the ultimate

8   determination as to qualified immunity, the jury, not the judge, must decide the

9   disputed "foundational" or "historical" facts that underlie the determination. *Acosta*

10   *v. City & Cnty. of San Francisco,* 83F.3d 1143, 1147-48 (9th Cir. 1996).

11
12   ### III.   THE   FACTUAL   DISPUTES   PRECLUDE   SUMMARY   JUDGMENT ON PLAINTIFF'S EXCESSIVE FORCE CLAIMS.

13         "Force is excessive when it is greater than is reasonable under the

14   circumstances." *Santos v. Gates,* 287 F.3d 846, 854 (9th Cir.2002). The Ninth Circuit

15   has repeatedly held that "summary judgment or judgment as a matter of law in

16   excessive force cases should be granted sparingly." See, e.g., *Liston v. County of*

17   *Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing several cases); *Santos*, 287

18   F.3d at 853.

19         The Ninth Circuit has repeatedly held that excessively tight handcuffs can

20   constitute a Fourth Amendment violation. See, e.g., *Palmer v.Sanderson*, 9 F.3d 1433,

21   1436 (9th Cir.1993); *Santos*, 287 F.3d at 854; *LaLonde v. County of Riverside*, 203

22   F.3d 947, 960 (9th Cir.2000). Further, a permanent injury is not a prerequisite to a

23   claim of excessive force. *Fontana v. Haskins*, 262 F.3d 871, 880 (9th Cir.2001); see

24   also, *Baldwin v. Placer County*, 418 F.3d 966, 970 (9th Cir.2005).

25         Here, Gregoire describes handcuffs being applied in an excessively tight

26   manner causing unnecessary pain, Flores' act of actually tightening the handcuffs after

27   Gregoire complained, and being handcuffed in the back of Flores' patrol vehicle for

28   approximately 30 minutes. If the jury credits this testimony, then a verdict of

1  excessive force would be proper. This is particularly true when one realizes that no

2  force at all was necessary. *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d

3  1185, 1199 (9 Cir. 2001) ["[W]here there is no need for force, any force used is

4  constitutionally unreasonable."].

5      Defendants argue that Gregoire "merely asked Officer Flores twice in a period

6  of a couple of minutes"to loosen the handcuffs  and that Gregoire "never stated that

7  he told Officer Flores he was in any pain." Defendants cite no authority that requires

8  an individual to complain that they are in pain, but even so, Gregoire's request to

9  loosen the handcuffs was sufficient to satisfy the requirement. *Wall v. Cnty. of*

10  *Orange*, 364 F.3d 1107, 1109-10, 1112 (9th Cir. 2004).

11      Defendants argue that Flores is entitled to qualified immunity on the excessive

12  force claim based on the factual circumstances. Flores denies tightening the handcuffs.

13  (SSUMF, Fact 104). Defendants do not argue that the a violation of a constitutional

14  right and that the right in issue, excessively tight handcuffs, was "clearly established"

15  at the time. Because the factual circumstances are in dispute, summary judgment

16  granting qualified immunity is not proper. *Acosta,* 83F.3d at 1147-48.

17      **IV.   FLORES VIOLATED CALIFORNIA CIVIL CODE SECTION 52.1**
            **BECAUSE THERE WAS NO PROBABLE CAUSE FOR THE**
18              **ARREST.**

19      Defendants argue that Flores defeats Plaintiff's claim under California Civil

20  Code section 52.1 because Flores had probable cause to arrest Gregoire. As shown in

21  Section I above, Flores did not have probable cause.

22      **V.   THE FACTUAL DISPUTES PRECLUDE SUMMARY**
23              **JUDGMENT ON PLAINTIFF'S BATTERY CLAIM.**

24      "Claims of excessive force under California law are analyzed under the same

25  standard of objective reasonableness used in Fourth Amendment claims." *Hayes v.*

26  *County of San Diego,* 736 F. 3d 1223, 1232 (9th Cir. 2013). The same factual analysis

27  that is required for the Fourth Amendment excessive force claim will be used in

28  analyzing the state battery claim, therefore, as shown in section III above, the question

of whether the force used by Flores was reasonable is one for the jury.

## VI.   FLORES IS LIABLE FOR FALSE IMPRISONMENT BECAUSE THERE WAS NO PROBABLE CAUSE FOR THE ARREST.

Defendants' sole argument that Flores is not liable for false imprisonment is because Flores had probable cause to arrest Gregoire. As shown in Section I above, there was no probable cause and Defendants argument fails.

## VII.   THE FACTS SHOW THAT FLORES ENGAGED IN OUTRAGEOUS CONDUCT

Defendants argue that the facts don't demonstrate extreme and outrageous conduct because Flores had grounds for believing he had probable cause to arrest Gregoire and because he never told Flores that he was encountering pain from the handcuffs. This is not the way Plaintiff views Flores' conduct, not the way EMT Rees saw it, and certainly not the way the patient on the ground saw it. Rees described Flores' actions as "shocking," and the patient stated "Are you going to leave me here? Are you?"  (Rees. decl. p.2, ¶¶ 6, 7)

"'It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.'" *Golden v. Dungan*, 20 Cal. App. 3d  295, at pages 308-309 (1971).

## VIII.  THE STATE (CHP) WAIVED IMMUNITY BY REMOVING THE CASE TO FEDERAL COURT.

The 9th Circuit has a "straightforward, easy-to-administer rule": Removal waives Eleventh Amendment immunity. *Embury v. King,* 361 F. 3d 562, 566 (9th Cir. 2004).

1

2      Dated: January 19, 2016                    The Gilleon Law Firm

3

4                                                      s/ Steve Hoffman

5                                                 Steve Hoffman, Attorneys for

6                                                 Plaintiff Jacob Gregoire

7

8      Dated: January 19, 2016                    CASEY GERRY SCHENK
                                                  FRANCAVILLA   BLATT   &
9                                                 PENFIELD, LLP

10

11                                                     s/ Thomas D. Luneau

12                                                Steve Hoffman, Attorneys for

13                                                Plaintiff Jacob Gregoire

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28