Daniel M. Gilleon (SBN 195200)
*dmg@mglawyers.com*
Steve Hoffman (SBN 237466)
*shoffmanlaw@gmail.com*
**THE GILLEON LAW FIRM**
1320 Columbia Street, Suite 200
San Diego, CA 92101
Tel: (619) 702-8623/Fax: (619) 702-6337

David S. Casey, Jr., SBN 060768
*dcasey@cglaw.com*
Thomas D. Luneau, SBN 145804
*tdl@cglaw.com*
**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA  92101
Tel: (619) 238-1811/Fax: (619) 544-9232

Attorneys for Plaintiff Jacob Gregoire

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB GREGOIRE,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL, an agency of the State of California; SERGIO FLORES, and DOES 1 to 20,<br><br>    Defendants. | CASE NO. 14-cv-1749-GPC (DHB)<br><br>Judge:  Hon. Gonzalo P. Curiel<br>Dept:  2D<br><br>**PLAINTIFF'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS**<br><br>Date: February 19, 2016<br>Time: 1:30 p.m. |

Plaintiff, JACOB GREGOIRE, submits the following Separate Statement of Undisputed Material Facts and reference to supporting evidence in opposition to Defendants' Motion for Summary Judgment, or in the alternative, Summary Adjudication of Claims:

## I.    <u>ISSUE 1: THE FIRST CAUSE OF ACTION UNDER 42 U.S.C. § 1983 FOR UNLAWFUL ARREST UNDER THE FOURTH AMENDMENT</u>

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. During the evening of February 4, 2014, Officer Eliazar Colunga was on duty for the C-watch (5:00 p.m. to 5:30 a.m.) in his employment as a California Highway Patrol (CHP) patrol officer.<br><br>Declaration of Eliazar Colunga in Support of Defendants' Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication of Claims [hereafter "Colunga Decl."], p. 1, ¶¶ 1-2. | 1. Undisputed. |
| 2. During this time period, Officer Colunga was wearing a tan CHP uniform that bore CHP patches identifying him as a law enforcement officer.<br><br>Colunga Decl., p. 1, ¶ 2. | 2. Undisputed. |
| 3. As of the date of February 4, 2014, Officer Colunga had been a CHP patrol officer for approximately 17 years.<br><br>Colunga Decl., p. 1, ¶ 1. | 3. Undisputed. |
| 4. During the evening of February 4, 2014, Defendant Officer Sergio Flores was on duty for the C-watch (5:00 p.m. to 5:30 a.m.) in his employment as a California Highway Patrol (CHP) patrol officer.<br><br>Declaration of Sergio Flores in Support of Defendants' Motion for Summary Judgment, or, in the Alternative, for Summary Adjudication of Claims [hereafter "Flores Decl."], p. 1, ¶¶ 1-2. | 4. Undisputed. |
| 5. During this time period, Officer Flores was wearing a tan CHP uniform that bore CHP patches identifying him as a law enforcement officer.<br><br>Flores Decl., pp. 1-2, ¶ 2. | 5. Undisputed. |
| 6. Officer Flores has been a CHP patrol officer since July 1994.<br><br>Flores Decl., p. 1, ¶ 1. | 6. Undisputed, but plaintiffs' police tactics expert Roger Clark in his declaration indicates there is personnel records that indicate poor judgment, excessive force, and |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | improper heavy-handed contact with citizens. |
| 7.  Just before 9:30 p.m., Officer Colunga responded to a radio call regarding an overturned vehicle in the area of Interstate 805 and Telegraph Canyon Road.<br><br>Colunga Decl., p. 2, ¶ 3. | 7.  Undisputed. |
| 8.  The collisions occurred in the northbound lanes of the I-805, and the vehicle to which Officer Colunga was responding came to rest in a wide construction area between cement k-rail walls that separated the northbound and southbound lanes.<br><br>Colunga Decl., p. 2, ¶ 3. | 8.  Undisputed. |
| 9.  Officer Colunga saw no other on-duty emergency responders at the scene when he arrived and parked his patrol car south of the collision in the center construction area (and out of traffic lanes), where the k-rails on the southbound side ended and the center construction area was accessible.<br><br>Colunga Decl., p. 2, ¶ 3. | 9.  Undisputed. |
| 10.  Based on his training and experience over nearly 17 years as a CHP Officer, Officer Colunga believed that, as the law enforcement officer on scene, he was the Incident Commander when he arrived.<br><br>Colunga Decl., p. 2, ¶ 4. | 10.  Undisputed, but also, Fire Captain Albright radioed in that he was incident commander (IC).<br><br>Deposition of Captain David Albright (hereinafter "Albright depo."), pp. 66:10 and 66:18. |
| 11.  Officer Colunga approached the overturned vehicle and made contact with two civilians (one of whom was an off-duty Emergency Medical Technician [EMT]) who had come upon the accident scene after the accident but before Officer Colunga arrived.<br><br>Colunga Decl., p. 2, ¶ 5. | 11.  Undisputed. |
| 12.  Officer Colunga observed that both of the occupants of the rollover vehicle were already out of the vehicle and that | 12.  Undisputed. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| neither of them had required any extraction equipment or on-duty emergency personnel to get them out of the vehicle.<br><br>Colunga Decl., p. 2, ¶ 5. | |
| 13.  Officer Colunga saw that both of the occupants of the rollover vehicle were conscious, with one lying on the ground and the other standing.  During the evening, Officer Colunga was able to communicate with the two occupants.<br><br>Colunga Decl., p. 2, ¶ 5. | 13.  Undisputed. |
| 14.  Seeing that the off-duty EMT was holding the head of the person on the ground in C-spine position and was without equipment, Officer Colunga went to his vehicle to retrieve a first aid bag that would have a C-spine collar.<br><br>Colunga Decl., p. 2, ¶ 5. | 14.  Undisputed. |
| 15.  On the way to his patrol car, Officer Colunga saw an ambulance from American Medical Response (AMR) arrive and park in the center construction area just south of Officer Colunga's patrol car and out of traffic lanes.  The ambulance had its emergency lights activated.<br><br>Colunga Decl., pp. 2-3, ¶ 6; Deposition of Jacob Gregoire [hereafter Gregoire Depo.][1], p. 25, ln. 2 through p. 26, ln. 2; p. 26, ln. 17 through p. 27, ln. 21. | 15.  Disputed.  Captain Albright of the fire department testified that the AMR ambulance was 2-3 feet into the number 1 southbound lane.<br><br>Albright depo., pp. 64:1-65:2. |
| 16.  Seeing the ambulance crew walking to the rollover vehicle with their gear, Officer Colunga determined that it was not necessary for him to retrieve a first aid bag.<br><br>Colunga Decl., p. 3, ¶ 7 | 16.  Undisputed. |

---

[1] Excerpts of the Gregoire Transcript are attached as Exhibit A to the Declaration of Douglas E. Baxter in Support of Defendants' Motion for Summary Judgment, or, in the Alternative, Summary Adjudication of Claims.  All citations to transcript pages are to the pages in the original transcript.

558

4

14-cv-1749-GPC (DHB)

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 17.  Officer Colunga saw three people from the AMR ambulance, and, at the time, he believed all three were paramedics.  He did not learn until well after the events of the evening that two of them were paramedics and one was an EMT.<br><br>Colunga Decl., p. 3, ¶ 7. | 17.  Undisputed. |
| 18.  Based on the presence of the ambulance crew, Officer Colunga concluded that sufficient medical care was now on scene for the two occupants of the rollover vehicle, so he moved on to engage in other scene management and investigation activities.<br><br>Colunga Decl., p. 3, ¶ 7. | 18.  Disputed.  Independent witness Autumn Mitchell in her declaration stated that no CHP officer at the scene ever asked about the condition of the patients or consulted about how long the firemen were going to need to help the two patients.<br><br>Decl. of Autumn Mitchell, p. 2:13-15. |
| 19.  Based on his training and experience as a CHP Officer, Officer Colunga considers a CHP Officer's responsibilities as an Incident Commander at a traffic scene to include assessing the entire scene, making sure that medical care has been summoned for any potentially injured parties, making sure that the people on scene (civilians and first responders) are safe and not in the way of traffic or in any type of hazard.  He considers CHP Officers to be responsible for managing the entire scene, which includes controlling where equipment and personnel are located so as to minimize safety hazards to those on scene and to the motoring public nearby or approaching the scene.<br><br>Colunga Decl., p. 3, ¶ 8. | 19.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 20.  Soon after the ambulance arrived, fire trucks began arriving.  Officer Colunga saw Chula Vista Engine 52 arrive and park in the number 1 lane on the southbound side.<br><br>Colunga Decl., p. 3, ¶ 8; Gregoire Depo., p. 26, lns. 6-9; p. 86, lns. 18-21. | 20.  Undisputed. Additional Fact is Firefighter/EMT Jacob Gregoire, Fire Captain Albright and Firefighter/EMT Joshua Rees were on board.<br><br>Rees Decl. p. 1. ¶ 3 |
| 21.  Two other fire trucks arrived within short succession and parked behind Engine 52, blocking the number 1 and 2 | 21.  Undisputed. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| lanes (the lanes closest to the center of the southbound roadway). A fourth fire truck also came to the scene.<br><br>Colunga Decl., p. 3, ¶ 9. | |
| 22. Because he believed that the patients were being attended to by paramedics and that there was no collision scene in traffic lanes, Officer Colunga became concerned about fire trucks blocking traffic lanes.<br><br>Colunga Decl., p. 3, ¶ 10. | 22. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 23. Officer Colunga believed that there were sufficient medical personnel to tend to the patients, that too many fire crews were on scene, and that the trucks should be moved out of lanes.<br><br>Colunga Decl., pp. 3-4, ¶ 10. | 23. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005) and not a material fact FRCP 56(c). |
| 24. Officer Colunga talked to crew members from two trucks and explained that they were not needed and should leave the scene and return to their stations. These two trucks left the scene within a few minutes.<br><br>Colunga Decl., p. 4, ¶ 10. | 24. Objection. Irrelevant FRE 402, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 25. Officer Colunga subsequently had conversations with members of the other two fire crews to ask them to move their trucks to the center median.<br><br>Colunga Decl., p. 4, ¶ 10 | 25. Objection. Irrelevant FRE 402, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 26. Officer Colunga was concerned about unnecessary placement of fire trucks in traffic lanes, as CHP Officers are taught by CHP, and he also knows from his own personal experience in responding to other traffic accidents, that secondary accidents at collision scenes are a serious risk to the motoring public.<br><br>Colunga Decl., p. 4, ¶ 10; Declaration of Captain Albright [hereafter Albright Depo.][2] p. | 26. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |

---

[2] Excerpts of the Albright Deposition Transcript are attached as Exhibit B to the Declaration of Douglas E.

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 161, lns. 1-24; [for foundation, p. 6, lns. 13-23; p. 61, ln. 6 through p. 62, ln. 22; p. 177, lns. 16-24] | |
| 27.  Officer Colunga knew and believed that placement of emergency equipment at collision scenes creates a serious risk of causing secondary accidents among other motorists approaching the scene.<br><br>Colunga Decl., p. 4, ¶ 10; Albright Depo., p. 161, lns. 1-24; [for foundation, p. 6, lns. 13-23; p. 61, ln. 6 through p. 62, ln. 22; p. 177, lns. 16-24]. | 27.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 28.  Officer Colunga knew and believed that an important part of CHP Officers' duties as incident managers is to take appropriate steps to eliminate possible causes of secondary accidents.<br><br>Colunga Decl., p. 4, ¶ 10. | 28.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 29.  For this particular scene, Officer Colunga's analysis of why he believed the placement of the fire trucks was causing a risk of secondary vehicle accidents that could harm the public included the observation that there were four southbound lanes in the immediate area.<br><br>Colunga Decl., p. 4, ¶ 11. | 29.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 30.  Officer Colunga's analysis of the risk of secondary accidents also included the observation that, north of the scene, there were no shoulders in the southbound lanes because of the cement k-rail running adjacent to the inner edge of the number 1 lane.<br><br>Colunga Decl., p. 4, ¶ 11. | 30.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 31.  Officer Colunga's analysis of the risk of secondary accidents also included the observation that the trucks were blocking the number 1 lane and approximately one-half of the number 2 lane for southbound traffic. | 31.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |

Baxter in Support of Defendants' Motion for Summary Judgment, or, in the Alternative, Summary Adjudication of Claims.  All citations to transcript pages are to the pages in the original transcript.

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Colunga Decl., p. 4, ¶ 11. | |
| 32. Officer Colunga's analysis of the risk of secondary accidents also included the observation that, north of the collision scene, there is a crest in the roadway. Officer Colunga perceived that this would prevent southbound traffic from having a direct line of sight to see the fire trucks from a long distance. Officer Colunga believed there was a short distance between the point where cars would come over the crest and the point where the first trucks were stopped, which would not allow a lot of reaction time for southbound vehicles that could be approaching the scene at high speeds.<br><br>Colunga Decl., p. 4, ¶ 11. | 32. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 33. Officer Colunga's analysis of the risk of secondary accidents also included the knowledge that, on a freeway such as the I-805, vehicles typically travel at high rates of speed.<br><br>Colunga Decl., p. 4, ¶ 11. | 33. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 34. Officer Colunga's analysis of the risk of secondary accidents also included the knowledge that, particularly at the beginning of his time at the scene, he could hear people locking their brakes as they approached the scene.<br><br>Colunga Decl., p. 4, ¶ 11. | 34. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 35. Based on his observations at the scene, Officer Colunga formed the opinion that there was a significant risk of secondary collisions from the placement of fire trucks in the lanes.<br><br>Colunga Decl., p. 4, ¶ 11. | 35. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 36. Officer Colunga also perceived that the collision scene was enclosed in the construction area, with cement k-rails blocking off the scene from southbound and northbound traffic.<br><br>Colunga Decl., pp. 4-5, ¶ 11; Gregoire Depo., p. 47, ln. 3 through p. 50, ln. 19, & Ex. 3 to | 36. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Gregoire Depo. | |
| 37.  Officer Colunga determined that there was no debris from the collision in the southbound lanes, as no part of the collision occurred there.<br><br>Colunga Decl., p. 5, ¶ 11. | 37.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 38.  Based on his training and experience and assessment of the scene, Officer Colunga formed the opinion (at the traffic scene) that the placement of the fire trucks in lanes was creating a serious risk to the motoring public without apparent reason.<br><br>Colunga Decl., p. 5, ¶ 11. | 38.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 39.  Based on his analysis and conclusions, Officer Colunga wanted the fire trucks moved out of lanes for public safety, and this was the reason that he asked the crews to move the trucks out of lanes.<br><br>Colunga Decl., p. 5, ¶ 12. | 39.  Objection.  Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 40.  Despite his requests to the remaining two Chula Vista Fire crews to move their trucks, the trucks were not moved.<br><br>Colunga Decl., p. 5, ¶ 12. | 40.  Objection.  Irrelevant FRE 402, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material face FRCP 56(c). |
| 41.  After making his initial requests, Officer Colunga went back to the overturned vehicle to try to gather some information from one of the victims.<br><br>Colunga Decl., p. 5, ¶ 12. | 41.  Disputed.  Autumn Mitchell, an independent witness at the scene, in her declaration said that no CHP officer ever came to assess the victims.<br><br>Decl. of Autumn Mitchell, p. 2:13-15. |
| 42.  Officer Colunga subsequently noticed that the two fire trucks were still parked in lanes, so he went back to speak to the fire crews again and request that they move the fire trucks.<br><br>Colunga Decl., p. 5, ¶ 12. | 42.  Disputed.  Autumn Mitchell, an independent witness at the scene, in her declaration said that no CHP officer ever came to assess the victims.<br><br>Decl. of Autumn Mitchell, p. 2:13-15. |
| 43.  It was at this point that Officer Colunga saw Officer Sergio Flores walk up to where Officer Colunga was standing with the fire fighters, close enough to where, in Officer Colunga's opinion, Officer Flores could have | 43.  Undisputed, but irrelevant as to what Colunga believed Flores could hear, not a material fact FRCP 56(c). |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| overheard the conversation. Colunga Decl., p. 5, ¶ 12. | |
| 44. Officer Colunga wanted the fire crews to move the fire trucks when he asked them to do so, and he expected them to comply with his requests. They did not move the fire trucks in response to his requests. Colunga Decl., p. 5, ¶ 13. | 44. Objection. Irrelevant FRE 402, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material face FRCP 56(c). |
| 45. Since this collision scene was on Officer Flores' beat, Officer Colunga knew that Officer Flores was taking over Officer Colunga's role as Incident Commander (i.e., in charge of scene management) once Officer Flores arrived. Colunga Decl., p. 5, ¶ 14. | 45. Disputed. Fire Captain Albright was Incident Commander upon his arrival at the scene. Albright Depo., pp. 65:21-66:21. |
| 46. Prior to Engineer Gregoire's arrest, Officer Colunga never witnessed Engineer Gregoire engaging in activities that Officer Colunga perceived to constitute patient care; instead, prior to the arrest, Officer Colunga saw Engineer Gregoire standing with a group of fire fighters in the center median area. At this time, Engineer Gregoire did not appear to Officer Colunga to be assisting in patient care. Colunga Decl., p. 5, ¶ 15. | 46. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 47. At no time did Officer Colunga see a fire, see smoke, smell smoke, see or smell any leaking gas from the overturned vehicle, see any movement in the overturned vehicle, see any sparking near the overturned vehicle, or detect any other indications that there was a likelihood of fire occurring at the scene. Colunga Decl., pp. 5-6, ¶ 16. | 47. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |
| 48. At this scene, Officer Colunga did not form a belief that it would be necessary for the fire trucks to remain blocking lanes in order to protect the pathway of the ambulance when it came | 48. Objection. Irrelevant FRE 402, opinion testimony by laywitness FRE 701, see also *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005), and not a material fact FRCP 56(c). |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| time for it to leave the scene.<br><br>Colunga Decl., p. 6, ¶ 17. | |
| 49.  Officer Flores initially became involved in the rollover collision at approximately 9:30 p.m., when he heard radio traffic regarding a collision on Interstate 805, just south of Telegraph Canyon Road.<br><br>Flores Decl., p. 2, ¶ 3. | 49.  Undisputed. |
| 50.  After clearing a traffic stop in Mission Valley, Officer Flores began driving southbound on the I-805 to respond to the accident scene.<br><br>Flores, Decl., p. 2, ¶ 3. | 50.  Undisputed. |
| 51.  Since the accident was in his beat area, Officer Flores's intent was to follow what he understood to be the normal practice amongst CHP Officers and respond to the collision scene to take over the collision investigation and take over as the incident manager (often referred to as Incident Commander).<br><br>Flores Decl., p. 2, ¶ 3. | 51.  Disputed.  Fire Captain Albright was Incident Commander upon his arrival at the scene.<br><br>Albright Depo., pp. 65:21-66:21. |
| 52.  Upon approaching the scene, Officer Flores perceived that traffic was backing up, so he began a traffic break to bring traffic approaching the scene in slowly.<br><br>Flores Decl., p. 2, ¶ 4. | 52.  Undisputed. |
| 53.  Officer Flores came upon a fire truck that was parked mostly in the number 1 lane (i.e., the lane closest to the center median) and partially into the number 2 lane.<br><br>Flores Decl., p. 2, ¶ 4. | 53.  Undisputed. |
| 54.  Where this fire truck was stopped, Officer Flores could see that there was a cement k-rail (also called a Jersey wall) immediately butting up against the east side of the southbound number 1 lane.  Thus, from the rear of the fire truck and proceeding back (i.e., northbound) along the eastern edge of the southbound I-805 for a substantial distance, there was cement k-rail | 54.  Undisputed. |

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| abutting the number 1 lane.<br><br>Flores Decl., p. 2, ¶ 4. | |
| 55.  Because he saw the fire truck blocking the number 1 lane and part of the number 2 lane, Officer Flores initially believed that the accident must be located in the number 1 lane in front of the fire truck.<br><br>Flores Decl., p. 2, ¶ 5. | 55.  Undisputed, but also irrelevant FRE 402. |
| 56.  Officer Flores therefore stopped his patrol car approximately 100 feet behind this fire truck and proceeded to lay a flare pattern on the road, proceeding from the rear of his patrol vehicle in a diagonal pattern moving southbound toward the number 2 lane.<br><br>Flores Decl., p. 2, ¶ 5. | 56.  Undisputed. |
| 57.  As he moved his flare pattern close to the fire truck, Officer Flores saw that the actual collision scene was to his left in a construction area on the other side of the k-rails.  Officer Flores perceived that the collision scene was between cement k-rails that blocked off a large construction area between the northbound and southbound lanes.<br><br>Flores Decl., p. 3, ¶ 6; pp. 5-6, ¶¶ 12 & 13, & Exhibits A & B to Flores Decl.; Gregoire Depo., p. 47, ln. 3 through p. 50, ln. 19, & Ex. 3 to Gregoire Depo. | 57.  Undisputed. |
| 58.  Officer Flores concluded that the collision scene was not in any traffic lanes.<br><br>Flores Decl., p. 3, ¶ 6; pp. 5-6, ¶¶ 12 & 13, & Exhibits A & B to Flores Decl.; Gregoire Depo., p. 47, ln. 3 through p. 50, ln. 19, & Ex. 3 to Gregoire Depo. | 58.  Disputed.  Captain Albright testified that the AMR ambulance was within lane #1 and was protruding approximately 2-3 feet.<br><br>Albright Depo., pp. 64:1-65:2. |
| 59.  Officer Flores saw fire personnel, paramedics, and at least one of the people who had been involved in the collision near the vehicle in this center area. | 59.  Undisputed. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Flores Decl., p. 3, ¶ 6; pp. 5-6, ¶¶ 12 & 13, & Exhibits A & B to Flores Decl. | |
| 60.  Officer Flores determined that the collision had occurred on the northbound side and that the vehicle had come to rest in the construction area.<br><br>Flores Decl., p. 3, ¶ 6; pp. 5-6, ¶¶ 12 & 13, & Exhibits A & B to Flores Decl.; Gregoire Depo., p. 47, ln. 3 through p. 50, ln. 19, & Ex. 3 to Gregoire Depo; Gregoire Depo., p. 50, ln. 20 through p. 51, ln. 19, and Ex. 4 to Gregoire Depo. | 60.  Undisputed. |
| 61.  Officer Flores saw paramedics providing medical care to the vehicle occupants.<br><br>Flores Decl., p. 3, ¶ 6. | 61.  Undisputed.<br><br>Additional Facts: Flores did not consult with any medical personnel or firefighters about the status of patient care.<br><br>Hutton Decl. p. 2, ¶ 7. |
| 62.  Very soon after completing his flare pattern, Officer Flores saw Officer Colunga (who had arrived before Officer Flores) speaking to a group of firefighters.<br><br>Flores Decl., p. 3, ¶ 7. | 62.  Undisputed. |
| 63.  Officer Flores heard Officer Colunga asking the group why they had not yet moved their fire engine.<br><br>Flores Decl., p. 3, ¶ 7. | 63.  Undisputed. |
| 64.  Officer Flores heard Officer Colunga say that he had told them several times that they needed to move their fire engine.<br><br>Flores Decl., p. 3, ¶ 7. | 64.  Undisputed. |
| 65.  Officer Flores heard Officer Colunga state that the collision scene was safely within the construction area and that the truck was not providing any protection.<br><br>Flores Decl., p. 3, ¶ 7. | 65.  Disputed.  Captain Albright testified that the AMR ambulance was within the #1 lane of traffic approximately 2-3 feet.<br><br>Albright Depo., pp. 64:1-65:2. |
| 66.  Based on his training and | 66.  Objection.  Opinion testimony FRE |

558

13

14-cv-1749-GPC (DHB)

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| experience and his personal observations of the scene, Officer Flores formed the conclusion that having fire trucks parked in lanes was not necessary to protect the scene.<br><br>Flores Decl., p. 3, ¶ 8. | 701, also not a material fact FRCP 56(c). |
| 67.  Based on his training and experience with having responded to and investigated multiple traffic collisions, Officer Flores formed the belief that the fire truck was presenting an unnecessary risk to the public.<br><br>Flores Decl., p. 3, ¶ 8. | 67.  Objection.  Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 68.  Officer Flores knew that CHP Officers were trained that part of their role in managing traffic scenes is to make sure that the placement of vehicles and equipment is done in such a way as to prevent the serious problem of secondary automobile collisions.<br><br>Flores Decl., p. 3, ¶ 8. | 68.  Objection.  Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 69.  Officer Flores knew that such accidents occur due to the motoring public's surprise and confusion resulting from suddenly encountering lane blockages from emergency equipment in roadways at accident scenes and that this is a particular risk on freeways, where traffic can come upon accident scenes at high speeds.<br><br>Flores Decl., pp. 3-4, ¶8; Albright Depo., p. 161, lns. 1-24; [for foundation, p. 6, lns. 13-23; p. 61, ln. 6 through p. 62, ln. 22; p. 177, lns. 16-24]. | 69.  Objection.  Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 70.  Clearing lanes at traffic scenes to protect the public is a key part of CHP Officers' responsibilities as traffic incident managers.<br><br>Flores Decl., p. 4, ¶ 8. | 70.  Objection.  Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 71.  Officer Flores knew that CHP Officers are responsible for managing the entire scene of a traffic accident to protect the safety of people present at the scene and to protect the motoring public near the scene. | 71.  Objection.  Opinion testimony FRE 701, also not a material fact FRCP 56(c). |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Flores Decl., p. 4, ¶ 9. | |
| 72. Officer Flores's analysis of the scene management issues at this particular traffic scene also included his perception that the ambulance which had responded to treat patients was parked in the center median area and out of traffic lanes.<br><br>Flores Decl., p. 4, ¶ 9; Gregoire Depo., p. 25, ln. 2 through p. 26, ln. 2; p. 26, ln. 17 through p. 27, ln. 21. | 72. Disputed. Captain Albright of the fire department testified that the AMR ambulance was 2-3 feet into the number 1 southbound lane<br><br>Albright depo., pp. 64:1-65:2. |
| 73. Officer Flores' analysis of the scene management issues at this scene also included his realization that the collision did not occur in any southbound lanes, so there was no debris field in any southbound lanes.<br><br>Flores Decl., p. 4, ¶ 9. | 73. Undisputed. |
| 74. Officer Flores had made these observations by the time he was overhearing the conversation between Officer Colunga and the fire fighters.<br><br>Flores Decl., p. 4, ¶ 9. | 74. Undisputed. |
| 75. Officer Flores formed the belief that having fire trucks parked in lanes was posing a serious risk to the public and that this was not needed to protect the accident scene. He believed the accident scene to be fully shielded in a large center construction area by cement k-rail walls.<br><br>Flores Decl., p. 4, ¶ 9. | 75. Objection. Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 76. Officer Flores' analysis of the scene management issues at this scene also included the fact that the truck he was trying to get to move was on the I-805, which is a freeway on which people commonly travel at high speeds.<br><br>Flores Decl., p. 4, ¶ 9. | 76. Objection. Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 77. Officer Flores was concerned about | 77. Objection. Opinion testimony FRE |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| vehicles approaching from the north at high speeds and unexpectedly coming upon stopped emergency vehicles without time to react.<br><br>Flores Decl., p. 4, ¶ 9. | 701, also not a material fact FRCP 56(c). |
| 78.  Officer Flores was concerned about secondary accidents occurring and additional people getting injured or killed.<br><br>Flores Decl., p. 4, ¶ 9; Albright Depo., p. 161, lns. 1-24; [for foundation, p. 6, lns. 13-23; p. 61, ln. 6 through p. 62, ln. 22; p. 177, lns. 16-24]. | 78.  Objection.  Opinion testimony FRE 701, also not a material fact FRCP 56(c). |
| 79.  Since he believed this to be his accident scene, Officer Flores assumed he was taking the role of managing the scene upon his arrival.<br><br>Flores Decl., p. 4, ¶ 10. | 79.  Objection.  Not a material fact FRCP 56(c). |
| 80.  In his efforts to get the truck moved, Officer Flores called out to a group of fire fighters and asked who was driving the truck.<br><br>Flores Decl., p. 4, ¶ 10. | 80.  Undisputed. |
| 81.  An Engineer (later identified as Jacob Gregoire) stated that he as driving the truck.<br><br>Flores Decl., p. 4, ¶ 10. | 81.  Undisputed. |
| 82.  Officer Flores directed Engineer Gregoire to move the truck.<br><br>Flores Decl., p. 4, ¶ 10. | 82.  Disputed.  Gregoire testified that he was told to go back to the station, not to move the truck from the freeway.<br><br>Gregoire Depo., pp. 66:14-67:8.<br><br>Gregoire Depo., Exhibit 2<br><br>Hutton Decl. p. 2, ¶ 7. |
| 83.  Engineer Gregoire stated that he was not going to move the truck.<br><br>Flores Decl., p. 4, ¶ 10. | 83.  Disputed.  Gregoire told the officer that he was helping patients at the scene.  He was told to move the fire truck off the freeway.  He was not told to move the truck and stay at the scene, but rather was told to leave the freeway and go back to the station.<br><br>Gregoire Depo., pp. 66:14-67:8. |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Gregoire Depo., Exhibit 2 |
| | Hutton Decl. p. 2, ¶ 7. |
| 84.  Officer Flores told Engineer Gregoire that he was giving Engineer Gregoire a direct order to move his fire truck because Officer Flores believed it was causing a hazard.<br><br>Flores Decl., p. 4, ¶ 10. | 84.  Disputed.  Captain Albright testified that the ambulance was protruding 2-3 feet into the #1 lane of southbound I-805.  Therefore, the fire truck was not a hazard, but rather was protecting the safety of people at the scene.  Flores was delaying patient care as a result of his unlawful order to Gregoire to move the fire truck.<br><br>Albright Depo., pp. 64:1-65:2; Clark Decl.<br><br>Hutton Decl. p. 2, ¶ 7. |
| 85.  Despite Officer Flores repeating the direction to move his truck, Engineer Gregoire continued to state that he would not move it.<br>Flores Decl., pp. 4-5, ¶ 10. | 85.  Disputed.  Firefighter EMT Gregoire stated he could not move his truck because he was in the process of patient care.  Also, Gregoire was told to move his fire truck from the freeway.<br>Gregoire Depo., pp. 66:14-67:8.<br>Gregoire Depo., Exhibit 2<br>Hutton Decl. p. 2, ¶ 7. |
| 86.  Officer Flores then stated that, if Engineer Gregoire did not move the fire truck, Officer Flores was going to arrest him for disobeying an order and for delaying the officers in their investigation.<br>Flores Decl., p. 5, ¶ 10. | 86.  Disputed.  Firefighter EMT Gregoire stated he could not move his truck because he was in the process of patient care.  Also, Gregoire was told to move his fire truck from the freeway.<br>Gregoire Depo., pp. 66:14-67:8.<br>Gregoire Depo., Exhibit 2<br>Hutton Decl. p. 2, ¶ 7. |
| 87.  Engineer Gregoire told Officer Flores to go ahead and arrest him.  Engineer Gregoire refused to move the truck.<br><br>Flores Decl., p. 5, ¶ 10. | 87.  Disputed.  Firefighter EMT Gregoire stated he could not move his truck because he was in the process of patient care.  Also, Gregoire was told to move his fire truck from the freeway.<br>Gregoire Depo., pp. 66:14-67:8.<br>Gregoire Depo., Exhibit 2<br>Hutton Decl. p. 2, ¶ 7. |
| 88.  At this point, Officer Flores believed the following: that Engineer Gregoire was capable of driving the fire truck, that Engineer Gregoire was the | 88.  Objection.  Not a material fact FRCP 56(c). |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| driver of the fire truck, that Officer Flores had given Engineer Gregoire an order to move the truck pursuant to Officer Flores' duties to manage the traffic scene for public safety, that Engineer Gregoire was refusing to comply with that order despite several requests, that Officer Flores had warned Engineer Gregoire that he would be arrested if he did not comply, and that Engineer Gregoire was continuing to refuse to comply.<br><br>Flores Decl., p. 5, ¶ 11. | |
| 89.  Based on the circumstances, Office Flores formed the belief that Engineer Gregoire was in violation of California Penal Code § 148(a) and California Vehicle Code § 2800(a), believing that Engineer Gregoire was failing to follow Officer Flores' orders and was hindering/delaying Officer Flores' management and investigation of the accident scene.<br><br>Flores Decl., p. 5, ¶ 11. | 89.  Objection.  Not a material fact FRCP 56(c). |
| 90.  Officer Flores directed Engineer Gregoire to step over a k-rail (one that was between the two k-rails on the northbound and southbound sides of the center portion  of I-805).<br><br>Flores Decl., p. 5, ¶ 11. | 90.  Undisputed. |
| 91.  Engineer Gregoire stepped over the k-rail, and Officer Flores placed him under arrest.<br><br>Flores Decl., p. 5, ¶ 11. | 91.  Undisputed. |
| 92.  Officer Flores placed handcuffs on Engineer Gregoire's wrists and walked him back to Officer Flores' patrol car.<br><br>Flores Decl., p. 5, ¶ 11. | 92.  Undisputed. |
| 93.  Prior to arresting Engineer Gregoire, Officer Flores did not see | 93.  Disputed.  Firefighter EMT Gregoire |

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| Engineer Gregoire engaging in any activities that Officer Flores perceived to be patient care.<br><br>Flores Decl., p. 6, ¶ 14. | was engaging in patient care.<br><br>Hutton Decl.; Mitchell Decl.; Rees Decl.; Gregoire Depo., pp. 66:10-66:13.<br><br>Gregoire Depo., Exhibit 2 |
| 94.  To Officer Flores, it appeared that Engineer Gregoire was standing with a group of other fire fighters while others were actually treating patients.  Still shots of new media video images of the scene demonstrate points just prior to the arrest where there were multiple fire fighters present, including a point just prior to Officer Flores calling out for the driver of the truck where Engineer Gregoire appeared to be standing in a group.<br><br>Flores Decl., p. 6, ¶ 14; Albright Depo., p. 128, ln. 21 through p. 131, ln. 4, and Exhibit D to Albright Depo; Gregoire Depo., p. 96, ln. 24 through p. 99, ln. 24, and Exhibit 8 to Gregoire Depo. | 94.  Disputed.  Firefighter EMT Gregoire was engaging in patient care.<br><br>Hutton Decl.; Mitchell Decl.; Rees Decl.; Gregoire Depo., pp. 66:10-66:13.<br><br>Gregoire Depo., Exhibit 2 |
| 95.  Prior to ordering Engineer Gregoire to move the fire truck, Officer Flores was aware that the patients were being treated by paramedics from an ambulance.<br><br>Flores Decl., p. 6, ¶ 14. | 95.  Disputed.  Officer Flores testified in his deposition that he did not know how many people were injured, further, that he did not know the extent of their injuries, and the independent witness Mitchell indicates that no CHP officer ever inquired about the status of the patients.<br><br>Flores Depo., pp. 120-122:15; Mitchell Decl. |
| 96.  Given his belief that the patients were being treated by paramedics, Officer Flores did not perceive a reason why Engineer Gregoire could not move his fire truck.<br><br>Flores Decl., p. 6, ¶ 14;. | 96.  Objection.  Opinion testimony FRE 701, not a material fact FRCP 56(c).  Also, Flores testified at his deposition that the reason he arrested Gregoire so he would know what the consequences were for disobeying an order.<br><br>Flores Depo., pp. 148:20-149:7. |
| 97.  Officer Flores did not see any indication that Engineer Gregoire was engaged in any fire suppression activities, nor did Officer Flores perceive any signs of risk of fire at the scene so as to justify keeping the fire truck in its location.<br><br>Flores Decl., p. 6, ¶ 14; | 97.  Undisputed. |

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 98.  Engineer Gregoire and Captain Albright acknowledge they were not involved in fire suppression activities and did not perceive signs indicating a risk of the vehicle catching on fire.<br><br>Gregoire Depo., p. 34, ln. 7 through p. 35, ln. 20; Albright Depo., p. 134, ln. 9 through p. 136, ln. 25. | 98.  Undisputed. |
| 99.  Officer Flores' purpose in ordering Engineer Gregoire to move the fire truck was to eliminate a risk that Officer Flores believed it was posing to public safety.<br><br>Flores Decl., p. 6, ¶ 14. | 99.  Objection.  Opinion testimony FRE 701, not a material fact FRCP 56(c).  Also, Flores testified at his deposition that the reason he arrested Gregoire so he would know what the consequences were for disobeying an order.<br><br>Flores Depo., pp. 148:20-149:7.… |

## II.   ISSUE 2: THE SECOND CAUSE OF ACTION UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE UNDER THE FOURTH AMENDMENT

| DEFENDANTS' ALLGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 100.  The force used in arresting Engineer Gregoire began with Officer Flores directing Engineer Gregoire to step over the k-rail, whereupon Officer Flores placed him under arrest.<br><br>Flores Decl., p. 5, ¶ 11. | 100.  Undisputed. |
| 101.  Officer Flores placed handcuffs on Engineer Gregoire's wrists and walked him back to Officer Flores' patrol car.<br><br>Flores Decl., p. 5, ¶ 11; Gregoire Depo., p. 69, ln. 21 through p. 70, ln. 24. | 101.  Undisputed. |
| 102.  In the course of searching Engineer Gregoire before placing him in the patrol car, Officer Flores double-locked the handcuffs.<br><br>Flores Decl., p. 5, ¶ 11. | 102.  Disputed.  Gregoire testified that when he asked Officer Flores to loosen the handcuffs, Officer Flores tightened the handcuffs.<br><br>Gregoire Depo., pp. 71:18-23. |
| 103.  The point in double locking the | 103.  Undisputed. |

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

| DEFENDANTS' ALLGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| handcuffs is to prevent the handcuffs from tightening.<br><br>Flores Decl., p. 5, ¶ 11. | |
| 104.  At no point did Officer Flores intentionally tighten the handcuffs on Engineer Gregoire.<br><br>Flores Decl., p. 5, ¶ 11. | 104.  Disputed.  Gregoire testified that when he asked Officer Flores to loosen the handcuffs, Officer Flores tightened the handcuffs.<br><br>Gregoire Depo., pp. 71:18-23. |
| 105.  Engineer Gregoire admits that his only two statements he claims to have made to Officer Flores regarding the handcuffs were to ask Officer Flores, in the moments just prior to being placed in the patrol car, whether Officer Flores could loosen the handcuffs.<br><br>Gregoire Depo., p. 71, ln. 14 through p. 74, ln. 18. | 105.  Undisputed. |
| 106.  Engineer Gregoire admits that Officer Flores never said anything like, "No, I'm not going to loosen them?" or "I'm going to tighten them."<br><br>Gregoire Depo., p. 74, lns. 19-24. | 106.  Undisputed. |
| 107.  Engineer Gregoire admits that he does not recall ever checking his wrists between the time of his release from the handcuffs to the next morning to see if there were any marks on his wrists.<br><br>Gregoire Depo., p. 75, lns. 3-11. | 107.  Disputed.  Gregoire testified that he does not recall whether he checked his wrists the following morning.<br><br>Gregoire Depo., pp. 75:3-11. |
| 108.  Engineer Gregoire admits that, between the time of his release from the handcuffs to the time of his deposition on September 16, 2015, he never took any photographs to document any marks that he believed to have been left on either of his wrists from the handcuffs.<br><br>Gregoire Depo., p. 75, lns. 18-23. | 108.  Undisputed. |
| 109.  Engineer Gregoire admits that he never sought any medical care from any type of medical provider for injuries that he attributes to the handcuffs. | 109.  Undisputed. |

| DEFENDANTS' ALLGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| Gregoire Depo., p. 75, ln. 24 through p. 76, ln. 2. | |
| 110.  Engineer Gregoire admits that he never showed his wrists to anyone after the point of being released to say, "Hey, look, I've got marks from the handcuffs."<br><br>Gregoire Depo., p. 76, lns. 3-7. | 110.  Undisputed. |
| 111.  The only pain that Engineer Gregoire claims to have encountered after the time the handcuffs were released was as follows: "I think they were sore on my walk back, but I had a lot of adrenaline going on from what had just happened, so I may have put it out of my mind at that time.  It was just a relief to have them off."<br>Gregoire Depo., p. 76, lns. 8-13. | 111.  Undisputed. |
| 112.  Engineer Gregoire admits that his wrists were not sore the next morning when he woke up.<br>Gregoire Depo., p. 76, lns. 14-16. | 112.  Undisputed. |
| 113.  Engineer Gregoire admits that, since the time he was released from the handcuffs up to the time of his September 16, 2015, deposition, he has not experienced any pain in either wrist where the handcuffs had been.<br>Gregoire Depo., p. 76, lns. 17-23. | 113.  Undisputed. |
| 114.  Engineer Gregoire admits that no part of his body was physically hurt as a result of Officer Flores' actions from the point of his first physical contact with Engineer Gregoire in the course of the arrest to the point where Engineer Gregoire was released from the vehicle and let go.<br>Gregoire Depo., p. 152, lns. 9-18, p. 158, lns. 5-9. | 114.  Undisputed. |
| 115.  Other than his claim that the handcuffs were too tight, Engineer Gregoire admits that Officer Flores did | 115.  Undisputed, but irrelevant as a matter of law, FRE 402, *Headwaters Forest Def. v. County of Humbolt*. 240 F.3d 1185, 1199 (9th |

558

22

14-cv-1749-GPC (DHB)

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

| DEFENDANTS' ALLGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| not engage in any activity that Engineer Gregoire believed to be improper use of force.<br><br>    Gregoire Depo., p. 157, ln. 25 through p. 158, ln. 4. | Cir. 2001). |
| 116.  Engineer Gregoire remained in custody for approximately 30 minutes before being released.<br><br>    Flores Decl., pp. 6- 7, ¶¶ 15 & 16. | 116.  Undisputed. |

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

## III.   ISSUE 3: THE THIRD CAUSE OF ACTION FOR VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1 (BASED ON ALLEGED FALSE ARREST)

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Undisputed Material Facts Nos. 1 - 99 and Supporting Evidence are hereby incorporated by reference herein as though fully set out. | Please see plaintiffs' objections, disputed facts, case law, as well as additional facts above 1-116. |

## IV.   ISSUE 4: THE FOURTH CAUSE OF ACTION FOR BATTERY UNDER CALIFORNIA LAW

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Undisputed Material Facts Nos. 1 - 116 and Supporting Evidence are hereby incorporated by reference herein as though fully set out. | Please see plaintiffs' objections, disputed facts, case law, as well as additional facts above 1-116. |

## V.   ISSUE 5: THE FIFTH CAUSE OF ACTION FOR FALSE IMPRISONMENT UNDER CALIFORNIA LAW

| DEFENDANTS' ALLEGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' REPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Undisputed Material Facts Nos. 1 - 99 and Supporting Evidence are hereby incorporated by reference herein as though fully set out. | Please see plaintiffs' objections, disputed facts, case law, as well as additional facts above 1-116. |

558

24                                            14-cv-1749-GPC (DHB)

PLAINTIFFS SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT/SUMMARY ADJUDICATION

## VI.   ISSUE 6: THE SIXTH CAUSE OF ACTION UNDER CALIFORNIA LAW FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

| DEFENDANTS' ALLGED UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | PLAINTIFFS' RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Undisputed Material Facts Nos. 1 - 116 and Supporting Evidence are hereby incorporated by reference herein as though fully set out. | Please see plaintiffs' objections, disputed facts, case law, as well as additional facts above 1-116. |

Respectfully submitted,

CASEY GERRY SCHENK

Dated:  January 19, 2016         FRANCAVILLA BLATT & PENFIELD, LLP


By:   s/Thomas D. Luneau
      THOMAS D. LUNEAU
      *Attorneys for Plaintiff*
      *JACOB GREGOIRE*


THE GILLEON LAW FIRM

Dated:  January 19, 2016


By:   s/Steve Hoffman
      STEVE HOFFMAN
      *Attorneys for Plaintiff*
      *JACOB GREGOIRE*