KAMALA D. HARRIS
Attorney General of California
RICHARD F. WOLFE
Supervising Deputy Attorney General
DOUGLAS E. BAXTER
Deputy Attorney General
State Bar No. 201351
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 Telephone:  (619) 645-2034
 Fax:  (619) 645-2012
 E-mail:  Douglas.Baxter@doj.ca.gov
*Attorneys for Defendants State of California
(by and through the California Highway
Patrol) and Sergio Flores*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB GREGOIRE,<br><br>            Plaintiff,<br><br>   v.<br><br>CALIFORNIA HIGHWAY PATROL, an agency of the State of California; SERGIO FLORES, and DOES 1 to 20,<br><br>            Defendants. | Case No.: 14-cv-01749-GPC (DHB)<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          February 19, 2016<br>Time:         1:30 p.m.<br>Courtroom:  2D<br>Judge:        The Honorable Gonzalo P. Curiel |

## I.    PLAINTIFF SHOWS NO CLEARLY ESTABLISHED LAW

The arrest in this case was supported by probable cause.  (Defs.' Memo., Doc. 25-1, pp. 8-19 & pp. 20-26.[1])  Regardless, Officer Flores's actions did not violate any clearly established law and were objectively reasonable.  Plaintiff merely argues some conduct is so "patently violative" of a constitutional right that reasonable officers would not need precedent to know the action was unconstitutional.  (Plnt. Memo., Doc. 35, p. 18, lns. 12-21.)  Plaintiff's argument is an admission he cannot cite any specific clearly established law.  His citations for

---

[1] Page citations to court documents are to the ECF page numbers.

the "patently violative" rule do not support the rule's application here.

*Sorrells v. McKee*, 290 F.3d 965, 971 (9th Cir. 2002) noted this rule but still found prison officials entitled to qualified immunity because of a complete lack of published guiding authority and their reasonable belief they were acting lawfully. *Id.* at 971. In *Deorle v. Rutherford*, 272 F.3d 1272, 1279, 1281 (9th Cir. 1285), the Court held that every reasonable officer would know it was excessive force to shoot an unarmed man in the eye with a steel-shot-filled bean bag when the person committed no serious offense, was emotionally disturbed, was given no warning, posed no risk of flight, and presented no objectively reasonable threat to anyone. Use of the "patently violative" rule in such an extreme set of circumstances hardly shows the rule applies here. The case of *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004) recognized the "patently violative" rule. Yet, it found officers entitled to qualified immunity, since existing precedent did not make it clear to reasonable officers that using a flash-bang grenade in entering an apartment with multiple sleeping people was unconstitutional. *Id.* at 784.

*Wilson v. City of Hazelwood*, 628 F. Supp. 2d 1063, 1068, 1070-1071 (E.D. Mo. 2008) shows only that an officer was denied qualified immunity for arresting a firefighter based on the officer's reliance on a local ordinance that was trumped by state law. Yet, the case does not reveal what the statutes and ordinance stated. They cannot be compared to California's statutes (which give the CHP authority over accident scene management). The case did not discuss public safety concerns, scene dangers, or other factors that were considered by Officers Colunga and Flores for their orders. *Wilson* is non-binding and does not constitute existing precedent that places the unconstitutionality of an officer's conduct "beyond debate." *Aschcroft v. al-Kidd*, 563 U.S. 731, ___, 131 S. Ct. 2074, 2083 (2011).

II. **OFFICER COLUNGA'S OBSERVATIONS AND ACTIONS ARE RELEVANT AND SUPPORT THE PROBABLE CAUSE**

Plaintiff erroneously claims Officer Colunga's observations and actions are

irrelevant.  (Plnt. Opp. Memo., p. 8, lns. 16-27, citing *Moreno v. Baca*, 431 F.3d 633, 642 (9th Cir. 2005)).  Yet, *Moreno* merely held that two officers, who did not know of a parole condition, could not use that fact to support an arrest and search.  *Id.* at 641.  Here, Officer Colunga's information is relevant both to corroborate the facts Officer Flores relied on in giving his orders and for purposes of the "collective knowledge" rule in probable cause analysis.

In his Separate Statement of Undisputed Material Facts (Plnt. SSUMF) [Doc. 35-1], Plaintiff does not dispute the vast majority of Officer Colunga's facts regarding his experience, observations, analysis, actions, and inferences preceding the arrest.  (Plnt. SSUMF 3, 7-9, 11-14, 16-17, 19, 20-25, 26-39, 43, 44, & 46-48.)  For Facts 19, 22-40, 44, and 46-48, Plaintiff objects on the grounds of relevancy, lay opinion, the *Moreno* case, and materiality.  Yet, these facts are logically relevant and material because they directly corroborate Officer Flores' observations, analysis, and conclusions before the arrest.  (Defs. SSUMF 49-79.)  There is no improper lay opinion, as the evidence shows an experienced officer applying his training and experience to scene-management determinations.[2]

Moreover, under the collective knowledge rule, Officer Colunga's information must be considered in support of Officer Flores's conclusions that his orders were lawful and that he had probable cause to arrest Plaintiff for refusing to comply.  "[A]n arresting officer need not have personal knowledge of the facts indicating probable cause; rather, an arresting officer may rely on the collective knowledge of the other officers involved in the case."  *United States v. Bertrand*, 926 F.2d 838, 844 (9th Cir. 1991).  The collective knowledge of officers cooperating in an investigation/scene management must be considered, even if not all of that information was communicated to the officer who ultimately made the arrest.  *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007).  The rule does not

---

[2] This reasoning also applies to Plaintiff's objections about Officer Flores's observations and conclusions.  (Plnt. SSUMF 66-71, 75-79, 88-89, 96, & 99.)

require a briefing among officers before an arrest. As *Ramirez* explains, there is a limited requirement "that there be a communication but not necessarily the conveyance of any actual information among the officers." *Id.* at 1032-1033.

      Here, Officer Flores responded to the same accident and was working together with Officer Colunga. It was on Officer Flores's beat; thus, he intended to take over scene management. (Plnt. SSUMF, 51[3].) Officer Flores heard Officer Colunga tell the group of firefighters that he wanted their truck moved. (Plnt. SSUMF 40-43[4], 62-63.) Officer Flores heard Officer Colunga ask the crews why they had not moved their truck. Officer Flores heard Officer Colunga say that he had told them several times they needed to move it, that the collision scene was safely within the construction area, and that the truck was not providing any protection. (Plnt. SSUMF 62-65.) While Plaintiff says SSUMF 65 is "disputed," he merely cites Captain Albright's testimony that the ambulance was protruding 2 to 3 feet into the first lane of traffic. This does not contradict what Officer Flores

---

[3] Plaintiff says "disputed" for SSUMF 51, but he only cites testimony that Captain Albright radioed he was Incident Commander on arrival. This is not a genuine contradiction of CHP officers' practice for the beat officer being considered the Incident Commander upon arrival. (See Defendants' Separate Statement of Undisputed Material Facts [Defs.' SSUMF] 45 & 51.) There is no dispute CHP was first on scene, that Officer Colunga reasonably believed he was the original Incident Commander, and that such a role entailed extensive CHP scene management duties. (Plnt. SSUMF 7, 9, 10, 19, & 20.) Plaintiff offers no law or facts to show that Captain Albright's radio call actually gave him Incident Commander authority over the overall scene management. This authority is statutorily placed with the CHP. Cal. Penal Code § 409.3 and Cal. Health & Safety Code § 1798.6(c). This analysis also applies to the "disputed" claim for SSUMF 45, i.e., Officer Colunga's belief about Officer Flores assuming Incident Command.

[4] While Plaintiff claims SSUMF 41 and 42 are disputed, he notes only that Autumn Mitchell said no CHP officer ever came to assess the victims. Yet, Ms. Mitchell's Declaration (Doc. 35-4, p. 2, lns. 13-15) only states "While at the scene, I never heard the CHP officer ask about the condition of the patients or consult about how long or how many men were needed to help the two patients." This does not raise a genuine dispute as to Officer Colunga's testimony about talking to the fire fighters (and indeed talking to the patients) and as to Officer Flores' testimony as to what he heard Officer Colunga state to the fire fighters. Ms. Mitchell shows no foundation that she had personal knowledge of what the officers did or did not do during the entire one to two hours she was there. Fed. R. Evid. 602. She does not state she had her eyes and ears on the officers, patients, and firemen at all times so as to be sure what they did. This analysis also applies to Plaintiff's reliance on the Mitchell declaration for SSUMF 18 & 95.

says he overheard Officer Colunga saying.  Thus, Officer Colunga communicated significant information that Officer Flores heard and relied upon.  All of Officer Colunga's observations, knowledge, and actions must therefore be imputed to Officer Flores for determining the lawfulness of the orders and probable cause. *United States v. Bernard*, 623 F.2d 551, 560-561 (9th Cir. 1980).

### III. ROGER CLARK'S DECLARATION DOES NOT CREATE A GENUINE DISPUTE

As long as a reasonable officer could have believed his conduct was reasonable, the plaintiff cannot overcome a motion for summary judgment simply by producing an expert's report that an officer's conduct was "'imprudent, inappropriate, or even reckless.'" *City and County of San Francisco v. Sheehan*, ___ U.S. ___, 135 S. Ct. 1765, 1777 (2015) (quoting *Billington v. Smith*, 292 F.3d 1177, 1189 (9th Cir. 2002)).

### IV. CAPTAIN ALBRIGHT'S CLAIM ABOUT THE LOCATION OF THE AMBULANCE DOES NOT CREATE A GENUINE DISPUTE

Plaintiff cites Captain Albright's testimony that the rear corner of the AMR ambulance was two to three feet into the number 1 southbound lane.  (Plnt. SSUMF 15, 58, 65, 72, and 84.)  Yet, Plaintiff does not genuinely dispute the two officers' reasonable perception that the ambulance was in the center divider area.  Indeed, cited in support of both officers' conclusion on this point was Plaintiff's own confirmation of that impression. (Defs.' SSUMF 15 & 72, Gregoire Depo. Excerpt, Doc. 25-3, ECF p. 9, ln. 2 – ECF p. 10, ln. 2; ECF p. 10, ln. 17 – ECF p. 11, ln. 21.) The officers reasonably concluded the ambulance was in the center divider area. The officers reasonably relied on this as one of many factors in determining the fire truck should be moved.  Even if they were mistaken about the position, reasonable mistakes of fact do not overcome qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Also, both officers knew the rollover vehicle, patients, paramedics, and other

firefighters were shielded from southbound traffic by two separate cement k-rails and an unused construction lane. (Plnt. SSUMF 8, 36, 37, 54, 57, 59, 60, 73, & 75.)

## V. THE OFFICERS' PERCEPTION OF PATIENT CARE IS SUPPORTED BY THE RECORD; PLAINTIFF'S ARGUMENTS DO NOT CREATE A GENUINE DISPUTE

There is no genuine dispute of Officer Colunga's and Flores's reasonable perception there was more than enough personnel to care for the patients and that Plaintiff did not appear to be needed for patient care. It is undisputed that Officer Colunga saw that both patients were conscious, did not need extraction from their vehicle, and that one was standing. Officer Colunga was able to talk to the patients. (Plnt. SSUMF 12 & 13.) Paramedics arrived before fire personnel. Both CHP officers saw the paramedics treating the patients. (Plnt. SSUMF 15, 16, 17, 20, 21, 22, 59, & 61.) Also undisputed is Officer Colunga's belief that the patients were sufficiently cared for by the paramedics. (Plnt. SSUMF 22-23.) Plaintiff's dispute as to Officer Flores's similar belief (Plnt. SSUMF 95) is not supported by the cited testimony (i.e., pages 120 - 122:15 of the Flores' deposition). Plaintiff claims this testimony shows Officer Flores did not know how many people were injured or the extent of their injuries. Yet, this does not refute his declaration that he saw paramedics treating the patients. Also, Plaintiff omitted page 121[5] from Doc. 35-2 [see ECF pp. 15-16]. That page (lines 1-21) shows Officer Flores believed only one of the two patients was injured. Page 122 shows he recalled seeing one of the patients being treated. Thus, Plaintiff creates no genuine dispute on this issue.

The Mitchell, Rees, and Hutton declarations (Plnt. SSUMF 82 – 87 & 93 – 95) do not refute both officers' reasonable perceptions that Plaintiff did not appear to be engaged in or even essential to patient care. These declarations contain only broad, conclusory statements that Plaintiff was involved in patient care. They do not

---

[5] This page is attached to the Declaration of Douglas E. Baxter in Support of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. It was cited by Plaintiff and should also be considered under Rule 106 of the Federal Rules of Evidence so as not to distort the full testimony.

refute the officers' observations (as supported by pictures of the scene just before the arrest) that Plaintiff appeared to be simply standing with a group of firefighters and the two civilians. (Defs.' SSUMF 46 & 93-96.) Plaintiff's own testimony states that, at the moment Officer Flores called out for the driver of the truck, Plaintiff was only standing there holding a flashlight over the gurney and patients. (Doc. 35-2, Gregoire Depo. Excerpt, ECF p. 11, lns. 2-13.)

Even if Plaintiff had been involved at some point in patient care, this is not dispositive. Plaintiff does not dispute the presence of all the other emergency personnel staff (including another CHP Officer besides Flores) shown in the photographs. Plaintiff does not overcome the officers' reasonable conclusions that more than enough staff appeared to be available for patient care, that the truck was posing a safety hazard, and that it was reasonable to have the driver move the truck.

A debate over whether Plaintiff was told to move the truck into the center divider or back to the station is also insufficient to overcome the officers' reasonable belief that the paramedics were sufficient to care for the patients and that the truck needed to be moved.

Plaintiff's claim the officers did not consult with any medical staff is supported only by conclusory declarations by people who did not watch the officers at all times. Fed. R. Evid. 602. Also, there is no genuine dispute that Officer Colunga spoke to firefighters from all four trucks to ask them to move their trucks. (Plnt. SSUMF 24-25, 40-42.) Officer Flores heard Officer Colunga tell the group of fire fighters that he wanted their truck moved. (Plnt. SSUMF 40-43, 62-63.) Officer Flores saw and heard Officer Colunga ask the crews why they had not moved their truck. Officer Flores heard Officer Colunga say that he had told them several times they needed to move it, that the collision scene was safely within the construction area, and that the truck was not providing any protection. (Plnt. SSUMF 62-65.) It was objectively reasonable for both officers to conclude they had adequately discussed the matter with the firefighters. The mere fact that

Plaintiff disagreed with the officers commands does not overcome their statutory authority to exercise the final say over scene management.

## VI. THE FIRE TRUCK WAS SUBJECT TO CHP AUTHORITY

Plaintiff contends Officer Flores lacked authority under California Vehicle Code § 2410[6] to order the fire truck moved. Plaintiff argues that "[a] fire truck parked at the scene of an emergency with personnel engaged in rescue operations is not defined as 'traffic' under California Vehicle Code § 620[.]" (Plnt. Memo., p. 2, lns. 2-7.) Plaintiff adds that such a truck is "not a vehicle 'using a highway for the purpose of travel', and therefore does not fall under the definition of 'traffic' under California Vehicle Code § 620[.]" (Plnt. Memo., p. 8, lns. 6-9.) This is plainly wrong, and reasonable officers would conclude that all vehicles at the scene of an accident are subject to CHP's authority under § 2410. This provision provides:

> Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code.

This law textually applies to normal situations and emergency situations, with no exception for fire trucks. Plaintiff's claim that § 620 excludes parked fire trucks would lead to patently absurd consequences the Legislature could not have contemplated, contrary to federal and California cannons of statutory construction. *Compton Unified School Dist. v. Addison*, 598 F.3d 1181, 1184 (9th Cir 2010); *Welch v. Oakland Unified School Dist.*, 91 Cal. App. 4th 1421, 1428 (2001). To be sure, § 620 provides: "The term "traffic" includes pedestrians, ridden animals, vehicles, street cars, and other conveyances, either singly or together, while using any highway for purposes of travel." However, to state that the "using any highway for purposes of travel" phrase excludes parked emergency vehicles would lead to the following kinds of absurd consequences that CHP would be powerless to stop:

---

[6] Further undesignated statutory citations are to the California Vehicle Code.

fire personnel could park multiple trucks across all lanes regardless of need and people could have mass sit-ins on freeways without consequence.

In *Sanctity of Human Life Network v. California Highway Patrol*, 105 Cal. App. 4th 858, 863 (2003), protestors standing with signs on sidewalks were causing road congestion. The CHP directed them to stop their actions. They sued the CHP for injunctive relief. *Id.* at 862. One of the issues on appeal was whether the protestors' activities fell within CHP's authority under § 2410 to direct traffic. *Sanctity of Human Life Network*, 105 Cal. App. 4th at 868-869. The Court held the CHP properly exercised authority under § 2410 to discontinue the protestors' activities because they caused traffic congestion. *Sanctity of Human Life Network*, 105 Cal. App. 4th at 871. In so concluding, the Court noted that "traffic" under § 620 included pedestrians. *Sanctity of Human Life Network*, 105 Cal. App. 4th at 869. Yet, these pedestrians were not using the highways for purposes of travel. The case could not have reached the result it did if the fact that they were not using the highway for purposes of travel took them out of the definition of traffic.

The clear purpose of § 2410 authority is to direct traffic for public safety and to reduce congestion. CHP authority under § 2410 serves a beneficial public function. *Sanctity of Human Life Network*, 105 Cal. App. 4th at 868 & 869. California "has a strong interest in ensuring the free flow of traffic on roadways." *Id.* at 870. Parked fire trucks at the scene of accidents are clearly an integral part of the traffic that CHP is authorized by § 2410 to manage. It would defy common sense to place Plaintiff's construction upon it. Even if there is some remote doubt, considering the truck as subject to § 2410 was objectively reasonable.

### VII. CALIFORNIA VEHICLE CODE § 21055 DOES NOT OVERRIDE CHP'S AUTHORITY UNDER § 2410

The rules of the road referenced by § 21055 are found in chapters 2 through 10 of division 11 of the California Vehicle Code and articles 3 and 4 of chapter 5 of division 16.5 of that code. Nothing in § 21055 exempts firefighters from CHP's

traffic authority under § 2410, which is found in chapter 2 of <u>division 2</u> of that code. Also, § 21055 affords no exemption from CHP's accident scene management authority under California Penal Code § 409.3 or Health and Safety Code § 1798.6.

The purpose of § 21055 "is to avoid the presumption of negligence that arises from the violation of a safety rule or regulation." *City of Sacramento v. Superior Court*, 131 Cal. App. 3d 395, 403. It does not relieve emergency personnel of the duty to operate (and park) their vehicles with due care for public safety. *Monroy v. City of Los Angeles*, 164 Cal. App. 4th 248, 258 (2008) (applying § 21056). The CHP was given overall incident management authority under § 2410, California Penal Code § 409.3, and California Health and Safety Code § 1798.6 to protect public safety. Plaintiff's construction would violate the rule against rendering the scene management statutes nullities. *Bilski v. Kappos*, 561 U.S. 593, 607-608 (2010) *People v. Le*, 82 Cal. App. 4th 1352, 1359 (2000). Also, § 2410 states that CHP's power to direct traffic applies "notwithstanding the provisions of this code."

## VIII. CONCLUSION

Officer Flores had probable cause to arrest Plaintiff and is entitled to qualified immunity.

Dated: February 2, 2016

Respectfully submitted,

KAMALA D. HARRIS
Attorney General of California
RICHARD F. WOLFE
Supervising Deputy Attorney General

s/DOUGLAS E. BAXTER
DOUGLAS E. BAXTER
Deputy Attorney General
*Attorneys for Defendants State of California (by and through the California Highway Patrol) and Sergio Flores*

SD2014707454
81256459.doc