1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

JACOB GREGOIRE,

11

Plaintiff,

12

v.

13

CALIFORNIA HIGHWAY PATROL,
an agency of the State of California;
SERGIO FLORES; and DOES 1 to 20,

14

15

Defendants.

CASE NO. 14CV1749-GPC(DHB)

**ORDER GRANTING IN PART AND
DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

[Dkt. No. 25.]

16
17

Before the Court is Defendants California Highway Patrol and Sergio Flores'

18

motion for summary judgment. (Dkt. No. 25.) An opposition was filed on January 20,

19

2016. (Dkt. No. 35.) A reply was filed on February 2, 2016. (Dkt. No. 42.) After a

20

review of the briefs, supporting documentation, and the applicable law, the Court

21

GRANTS in part and DENIES in part Defendants' motion for summary judgment.

22

**Procedural Background**

23

On June 12, 2014, Plaintiff Jacob Gregoire, a Fire Engineer/ Emergency Medical

24

Technician ("EMT") for the Chula Vista Fire Department filed a 42 U.S.C. § 1983

25

complaint against Defendant Sergio Flores, a California Highway Patrol ("CHP")

26

officer, and Defendant California Highway Patrol in San Diego Superior Court for

27
28

[14CV1749-GPC(DHB)]

unreasonable seizure,[1] excessive force and state law causes of action for violation of California Civil Code ("Civil Code") section 52.1, battery, false imprisonment, and intentional infliction of emotional distress.  (Dkt. No. 1-1, Compl.)  The case was removed to this Court on July 25, 2014.  (Dkt. No. 1.)  Defendants bring a motion for summary judgment on all causes of action in the complaint.  (Dkt. No. 25.)

## Factual Background

The undisputed facts are the following.  During the evening of February 4, 2014, CHP Officers Eliazar Colunga ("Colunga") and Sergio Flores ("Flores") were on duty for C-watch (5:00 p.m. to 5:30 a.m.).  (Dkt. No. 35-1, SSUF[2] Nos. 1, 4.)  Colunga has been a CHP patrol officer for about 17 years and Flores has been a CHP patrol officer since July 1994.  (Id., SSUF Nos. 3, 6.)

Just before 9:30 p.m., Officer Colunga responded to a radio call about an overturned vehicle in the area of Interstate 805 ("I-805") and Telegraph Canyon Road in the City of Chula Vista.  (Id., SSUF No. 7.)  The collision occurred in the northbound lanes of the I-805, and the vehicle to which Colunga was responding came to rest in a wide construction area between cement k-rail walls that separated the northbound and southbound lanes.  (Id., SSUF No. 8.)  Colunga saw no other on-duty emergency responders at the scene when he arrived and parked his patrol car south of the collision in the center construction area, where the k-rails on the southbound side ended and the center construction area was accessible.  (Id., SSUF No. 9.)

Colunga approached the overturned vehicle and made contact with two civilians, James Hutton ("Hutton") and Autumn Mitchell ("Mitchell") who had come upon the accident scene after the accident but before Colunga arrived.  (Id., SSUF No. 11.)

---

[1] In the motion for summary judgment, both parties address unreasonable seizure as an unlawful arrest cause of action.  "Courts generally treat an unlawful arrest as one manner of violating the Fourth Amendment prohibition on unreasonable seizures."  Kyles v. Baker, 72 F. Supp. 3d 1021, 1050 n. 2 (N.D. Cal. 2014) (citing cases) (district court considered separate claims of unlawful arrest and unreasonable seizure under a single unlawful arrest analysis).

[2] Plaintiff's Response to Defendants' Separate Statement of Undisputed Material Facts.  (Dkt. No. 35-1.)

Hutton was an off-duty EMT.  (Id.)  Officer Colunga saw that both of the occupants of the rollover vehicle were conscious, with one lying on the ground and the other standing.  (Id., SSUF No. 12.)  During the evening, Officer Colunga was able to communicate with the two occupants.  (Id., SSUF No. 13.)  Seeing that the off-duty EMT was holding the head of the person on the ground in a C-spine position and was without equipment, Officer Colunga went to his vehicle to retrieve a first aid bag that would have a C-spine collar.  (Id., SUF No.14.)

On the way to his patrol car, Officer Colunga saw an ambulance from American Medical Response ("AMR") arrive and park just south of Officer Colunga's patrol car.[3] (Id., SSUF No. 15.) The ambulance had its emergency lights activated.  (Id.)  When Colunga saw the ambulance crew walk over to the rolled over vehicle with their gear, Officer Colunga determined that it was not necessary for him to retrieve a first aid bag. (Id., SSUF No. 16.)  Colunga saw three people from the AMR ambulance, and, at the time, he believed all three were paramedics.  (Id., SSUF No. 17.)  Later, he learned that two of them were paramedics and one was an EMT.  (Id.)

Soon after the ambulance arrived, fire trucks began arriving.  (Id., SSUF No. 20.) Officer Colunga saw Chula Vista Engine 52 arrive and park in the number 1 lane on the southbound side.  (Id.)  Firefighter/EMT Gregoire drove Engine 52 with Captain David Albright and Firefighter/EMT Joshua Rees on board. (Dkt. No. 35-5, Rees Decl. ¶ 3.)  Two other fire trucks arrived within short succession and parked behind Engine 52, blocking the number 1 and 2 lanes. (Dkt. No. 35-1, SSUF No. 21.)  Then a fourth fire truck also came to the scene.  (Id.)  Colunga talked to crew members from two fire trucks, explained that they were not needed, should leave and return to their stations. (Dkt. No. 25-4, Colunga Decl. ¶ 10.)  Two fire trucks left the scene within a few

---

[3]The parties dispute whether the ambulance was out of traffic lanes.  Colunga asserts that the ambulance was parked outside of traffic lanes. (Dkt. No. 25-4, Colunga Decl. ¶ 6.)  However, Captain David Albright testified that as he approached the scene, he spotted the ambulance, meaning where you position your apparatus, and it was about 50% into the dirt shoulder and 50% into the No. 1 or fast lane.   (Dkt. No. 35-2, Luneau Decl., Ex. 1, Albright Depo. at 64:2-65:2.)  He concluded that the AMR ambulance was 2-3 feet into the number 1 southbound lane.  (Id.)

[14CV1749-GPC(DHB)]

minutes.  (Id.)  Colunga then asked members of the other two fire crews to move their trucks into the center median.  (Id.)  Despite his requests to the remaining two Chula Vista Fire crews to move their trucks, the trucks were not moved.  (Id. ¶ 12.)  Later, Officer Colunga noticed that the two fire trucks were not moved, so he went back to speak to the fire crews again and requested that they move the fire trucks.  (Id. ¶ 12.) It was at this point that Colunga saw Officer Flores walk up to where he was standing with the fire fighters, close enough so that Flores could have overheard the conversation.  (Dkt. No. 35-1, SSUF No. 43.)

At around 9:30 p.m., Defendant Officer Flores heard radio traffic regarding the collision.  (Id., SSUF No. 49.)  After clearing a traffic stop in Mission Valley, Flores began driving southbound on the I-805 to respond to the accident scene.  (Id., SSUF No. 50.)  Upon approaching the scene, Flores noticed that traffic was backing up so he began a traffic break to bring traffic approaching the scene in slowly.  (Id., SSUF No. 52.)  He came upon a fire truck that was parked mostly in the number 1 lane and partially into the number 2 lane.  (Id., SSUF No. 53.)  Where the fire truck was stopped, there was a cement k-rail abutting the number 1 lane on the east side of the southbound lanes.  (Id., SSUF No. 54.)  Flores stopped his patrol car about 100 feet behind the fire truck and started to lay a flare pattern on the road proceeding from the rear of his patrol vehicle in a diagonal pattern moving southbound toward the number 2 lane.  (Id., SSUF No. 56.)

Flores saw fire personnel, paramedics, and at least one of the people who had been involved in the collision near the vehicle in this center area.  (Id., SSUF No. 59.) Flores determined that the collision had occurred on the northbound side and that the vehicle had come to rest in the construction area.  (Id., SSUF No. 60.)  Officer Flores saw paramedics providing medical care to the vehicle occupants.  (Id., SSUF No. 61.) Soon after completing his flare pattern, Officer Flores saw Officer Colunga  speaking to a group of firefighters.  (Id., SSUF No. 62.)  Officer Flores heard Officer Colunga asking the group why they had not yet moved their fire engine and told them several

1 │ times that they needed to move their fire engine. (Id., SSUF Nos. 63, 64.)

2 │     In his efforts to get the fire trucks moved, Officer Flores called out to the group

3 │ of fire fighters and asked who was driving the truck. (Id., SSUF No. 80.) Plaintiff

4 │ responded and stated he was driving the truck. (Id., SSUF No. 81.) The facts are

5 │ disputed as the conversation between Gregoire and Officer Flores which will be

6 │ discussed below. (Id., SSUF Nos. 82-89.)

7 │     After the conversation, Flores directed Gregoire to step over a k-rail, Gregoire

8 │ stepped over the k-rail, and Officer Flores placed him under arrest and placed

9 │ handcuffs on Gregoire's wrists and walked him back to Flores' patrol car. (Id., SSUF

10 │ Nos. 90, 92, 101.) Plaintiff remained in custody for approximately 30 minutes before

11 │ being released. (Id., SSUF No. 116.)

12 │ **Discussion**

13 │ **A.    Legal Standard on Motion for Summary Judgment**

14 │     Federal Rule of Civil Procedure 56 empowers the Court to enter summary

15 │ judgment on factually unsupported claims or defenses, and thereby "secure the just,

16 │ speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477

17 │ U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the "pleadings,

18 │ depositions, answers to interrogatories, and admissions on file, together with the

19 │ affidavits, if any, show that there is no genuine issue as to any material fact and that the

20 │ moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact

21 │ is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc.,

22 │ 477 U.S. 242, 248 (1986).

23 │     The moving party bears the initial burden of demonstrating the absence of any

24 │ genuine issues of material fact. Celotex Corp., 477 U.S. at 323. The moving party can

25 │ satisfy this burden by demonstrating that the nonmoving party failed to make a

26 │ showing sufficient to establish an element of his or her claim on which that party will

27 │ bear the burden of proof at trial. Id. at 322-23. If the moving party fails to bear the

28 │ initial burden, summary judgment must be denied and the court need not consider the

nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159-60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading, but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324.  If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law.  Id. at 325.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  In making this determination, the court must "view[] the evidence in the light most favorable to the nonmoving party."  Fontana v. Haskin, 262 F.3d 871, 876 (9th Cir. 2001).  The Court does not engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts; these functions are for the trier of fact.  Anderson, 477 U.S. at 255.

**B.    42 U.S.C. § 1983 Causes of Action**

    **1.    Unlawful Arrest as to Defendant Flores**

Defendants argue that based on the totality of the circumstances, Flores[4]

---

[4]Defendants argue that, under the "collective knowledge" doctrine, Officer Colunga's knowledge must be considered in support of Officer's Flores' conclusion that his orders were lawful and he had probable cause to arrest Plaintiff for refusing to comply with Flores' orders.  Under the collective knowledge doctrine, the Court must look at "the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually [undertakes the challenged action]."  United States v. Ramirez, 473 F.3d 1026, 1032 (9th Cir. 2007) (quoting United States v. Sutton, 794 F.2d 1415, 1426 (9th Cir.1986)).  Defendants cite to cases addressing the "collective knowledge" rule in probable cause cases.  See United States v. Bertrand, 926 F.2d 838, 844 (9th Cir. 1991) ("information possessed by the undercover police woman and the lookout officer provided back up team with probable cause to arrest regardless of whether that information was actually communicated to them"); Ramirez, 473 F.3d at 1032 (collective knowledge doctrine applied to warrantless stop of automobile by police officer at the request of

[14CV1749-GPC(DHB)]

1    reasonably believed that it was appropriate to direct that the fire trucks be moved out

2    of lanes for safety reasons.  When Plaintiff failed to comply, it was reasonable for

3    Flores to conclude that Plaintiff was disobeying an order of a peace officer and was in

4    violation of California Penal Code section 148(a) and California Vehicle Code section

5    2800(a).  Plaintiff disputes Defendant's characterization as to what happened and

6    argues that his arrest was not supported by probable cause because Flores' order to

7    move the fire truck was not lawful.  In fact, Plaintiff asserts that Flores was in violation

8    of California Penal Code section 148(a) for delaying and obstructing the work of an

9    EMT.

10       "A claim for unlawful arrest is cognizable under § 1983 as a violation of the

11   Fourth Amendment, provided the arrest was without probable cause or other

12   justification." Lacey v. Maricopa Cnty., 693 F.3d 896, 918 (9th Cir. 2012).  Probable

13   cause exists when the officer has "a reasonable belief, evaluated in light of the officer's

14   experience and the practical considerations of everyday life, that a crime has been, is

15   being, or is about to be committed." Hopkins v. City of Sierra Vista, 931 F.2d 524, 527

16   _____

17   investigating officer within same police department without relaying any factual basis
     for investigating officer's determining of reasonable suspicion or probable cause);

18   United States v. Bernard, 623 F.2d 551, 560-61 (9th Cir. 1979) (collective knowledge
     of all three DEA agents was sufficient to establish probable cause where the DEA

19   agents were working in close concert and where arresting officer relied to a "great
     degree" on the opinion of another agent even though some of the critical information

20   had not been communicated to him.")  While Defendants cite to the general rule in
     these cases that an arresting offer need not have personal knowledge of facts indicating

21   probable cause and may rely on the collective knowledge of other officers in the case,
     the specific facts in these cited cases reveal that there was a close relationship between

22   the officers or a communication to arrest an individual based on the ordering person's
     information that supported probable cause.

23       Here, the facts establish that Flores overheard Colunga asking the group of
     firemen who their Fire Captain was and why they had not yet moved their fire engine.

24   (Dkt. No. 25-5, Flores Decl. ¶ 7.)  He heard someone state their truck was there to
     protect the scene. (Id.)  He heard Colunga say that he told them several times to move

25   the fire engine and that the collision scene was safely within the construction area and
     the truck was not providing protection. (Id.)

26       First, the facts and interaction that Flores witnessed do not rise to the level of
     probable cause especially in light of the statutes concerning the role of EMTs in an

27   accident scene.  Furthermore, there was no indication or direction by Colunga that
     Plaintiff should be arrested.  However, even applying the collective knowledge

28   doctrine, based on the record before this Court, a genuine issue of material fact exists
     as to whether there was probable cause to arrest Plaintiff.

[14CV1749-GPC(DHB)]

(9th Cir. 1991) (citation and internal quotations omitted).  "Probable cause exists if the arresting officers 'had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime.'"  Maxwell v. Cnty. of San Diego, 697 F.3d 941, 951 (9th Cir. 2012) (quoting United States v. Ricardo D., 912 F.2d 337, 342 (9th Cir. 1990)).  "Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury."  Harper v. City of Los Angeles, 533 F.3d 1010, 1022 (9th Cir. 2008) (citing McKenzie v. Lamb, 738 F.2d 1005, 1008 (9th Cir. 1984)).

Penal Code section 148(a)(1) provides,

> Every person who willfully resists, delays, or obstructs any public officer, peace officer, or an emergency medical technician . . . in the discharge or attempt to discharge any duty of his or her office or employment, when no other punishment is prescribed, shall be punished by a fine not exceeding one thousand dollars ($1,000), or by imprisonment in a county jail not to exceed one year, or by both that fine and imprisonment.

Cal. Penal Code § 148(a)(1).  This section makes it a crime to "willfully resist[], delay [], or obstruct[]" a peace officer or emergency medical technician "in the *lawful* exercise of his duties."  Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (emphasis in original).  The elements of a violation of section 148(a)(1) are "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."  Smith, 394 F.3d at 695 (quoting In re Muhammed C., 95 Cal. App. 4th 1325, 1329 (2002)).  "In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting, delaying, or obstructing a peace officer."  Id. at 695.  It is not a crime to resist unlawful orders.  Id.

In addition, California Vehicle Code section 2800(a) states,

> It is unlawful to willfully fail or refuse to comply with a lawful order, signal, or direction of a peace officer . . . when that peace officer is in uniform and is performing duties pursuant to any of the provisions of

[14CV1749-GPC(DHB)]

this code, or to refuse to submit to a lawful inspection pursuant to this code.

Cal. Veh. Code § 2800(a).  This section authorizes traffic officers to make "'an order, signal, or direction' the disobedience of which is illegal, is limited to lawful orders, willfully disregarded or disobeyed."  People v. Ritter, 115 Cal. App. 3d Supp. 1, 6 (1980) (quoting Cal. Veh. Code § 2800).

To determine whether Plaintiff violated these provisions, the Court must look at other related statutes, raised by both parties, that describe and define the role of CHP officers and EMT personnel during a traffic accident involving personal injury.  See Cal. Veh. Code §§ 2410, 2412; Cal. Penal Code § 409.3; Cal. Health & Safety Code § 1798.6.

CHP officers have lawful authority to investigate and direct traffic during accidents involving personal injuries on California highways.  See Cal. Veh. Code § 2412 ("All members of the California Highway Patrol may investigate accidents resulting in personal injuries or death and gather evidence for the purpose of prosecuting the person or persons guilty of any violation of the law contributing to the happening of such accident."); Cal. Veh. Code § 2410 ("Members of the California Highway Patrol are authorized to direct traffic according to law, and, in the event of a fire or other emergency, or to expedite traffic or insure safety, may direct traffic as conditions may require notwithstanding the provisions of this code.")

California Penal Code section 409.3 provides,

Whenever law enforcement officers and emergency medical technicians are at the scene of an accident, **management of the scene** of the accident shall be vested in the appropriate law enforcement agency, whose representative **shall consult** with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized. **However, authority for patient care management at the scene of an accident shall be determined in accordance with Section 1798.6 of the Health and Safety Code.**

For purposes of this section, "management of the scene of an accident" means the coordination of operations which occur at the location of an accident.

Cal. Penal Code § 409.3 (emphasis added).  Lastly, California Health & Safety Code

[14CV1749-GPC(DHB)]

section 1798.6 provides,

> (a) Authority for patient health care management in an emergency shall be vested in that licensed or certified health care professional, which may include any paramedic or other prehospital emergency personnel, at the scene of the emergency who is most medically qualified specific to the provision of rendering emergency medical care. If no licensed or certified health care professional is available, the authority shall be vested in the most appropriate medically qualified representative of public safety agencies who may have responded to the scene of the emergency. . . .
>
> (c) Notwithstanding subdivision (a), **authority for the management of the scene of an emergency shall be vested in the appropriate public safety agency having primary investigative authority. The scene of an emergency shall be managed in a manner designed to minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health. Public safety officials shall consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks.**

Cal. Health & Safety Code § 1798.6 (emphasis added).  "Management of the scene" under section (c) refers to "nonmedical management and therefore vests authority in law enforcement personnel . . . ." Cnty. of San Bernardino v. City of San Bernardino, 15 Cal. 4th 909, 928 (1997).  Based on these statutes, management of the scene of an emergency vests in the CHP officers while patient health care management in an emergency vests in the paramedics/EMTs.  Management of the scene requires the CHP officers to consult "with representatives of other response agencies at the scene to ensure that all appropriate resources are properly utilized", Cal. Penal Code § 409.3, and as it specifically relates to patient care, CHP officers must "consult emergency medical services personnel or other authoritative health care professionals at the scene in the determination of relevant risks," Cal. Health & Safety § 1798.6.  In addition, the accident scene must be managed to "minimize the risk of death or health impairment to the patient and to other persons who may be exposed to the risks as a result of the emergency condition, and priority shall be placed upon the interests of those persons exposed to the more serious and immediate risks to life and health." Id.  Penal Code

section 409.3 and Health & Safety Code section 1798.6 contain mandatory provisions requiring CHP officers to consult with medical personnel at the scene of an emergency accident. See Cal. Penal Code § 409.3; Cal. Health & Safety Code § 1798.6.

According to Defendant Flores, based on his training and experience and personal observations, he concluded that having fire trucks parked in traffic lanes were not necessary to protect the scene. (Dkt. No. 25-5, Flores Decl. ¶ 8.) CHP officers are responsible for managing the entire accident scene to protect the safety of the people at the scene and the motoring public near the scene. (Id. ¶ 9.) Secondary accidents occur at the scene of accidents due to the motoring public's surprise and confusion resulting from suddenly encountering lane blockages from emergency equipment in roadways during an accident scene. (Id.) This risk is higher on freeways where traffic can come upon accident scenes at high speeds. (Id.)

At this accident scene, as he heard the conversation between Colunga and the firefighters, Flores assessed that the ambulance which had responded to treat the patients was parked in the center median area and out of traffic lanes and the collision did not occur in any southbound lanes, so there was no debris field in any southbound lanes. (Id. ¶ 9.) Flores believed that having fire trucks parked in traffic lanes were posing a serious risk and unnecessary risk to the public and the trucks were not needed to protect the accident scene since it was fully shielded in a large center construction area by cement k-rail walls. (Id.) The truck he was trying to get moved was on the I-805, which is a freeway on which people commonly travel at high speeds and he was concerned about vehicles approaching at high speeds and unexpectedly coming upon stopped emergency vehicles without time to react and causing secondary accidents and additional people getting injured or killed. (Id.)

Flores states that prior to arresting Gregoire, he did not see him engaged in any activities that Flores perceived to be patient care. (Id. ¶ 14.) It appeared that Gregoire was standing with a group of other fire fighters while others were actually treating patients. (Id.) Prior to ordering Gregoire to move the fire truck, Officer Flores was

[14CV1749-GPC(DHB)]

aware that the patients were being treated by paramedics from an ambulance.  (Id.  ¶ 14.)  Given his belief that the patients were being treated by paramedics, Officer Flores did not perceive a reason why Engineer Gregoire could not move his fire truck.  (Id.)  Officer Flores' purpose in ordering Engineer Gregoire to move the fire truck was to eliminate a risk that Officer Flores believed it was posing to public safety.  (Id.)

When  Flores asked who was driving the truck, Plaintiff said that he was the driver.  (Id. ¶ 10.)  Flores directed Plaintiff to move the fire truck but Plaintiff said he would not move the truck.  (Id.)  Flores told him that he was giving him a direct order to move his fire truck but Plaintiff stated he would not move it.  (Id.)  Flores warned Plaintiff that if he did not comply he would be arrested by disobeying an order and for delaying officers in their investigation.  (Id.)  Plaintiff said to go ahead and arrest him.  (Id.)  Flores argues he reasonably believed that Plaintiff was in violation of Penal Code section 148(a) and Vehicle Code section 2800(a) when Plaintiff failed to comply with Flores' order to move the fire truck.

In response, Plaintiff argues that Flores improperly walked on the scene, assumed he was in charge and without any investigation, without consulting with representatives from other responding agencies, and without even consulting with the other CHP officer at the scene before him, ordered Plaintiff to stop assisting with patient care and move the fire truck.  Plaintiff contends that the arrest of Plaintiff was not supported by probable cause because Flores' order was not lawful.  Flores failed to consult with the health care providers concerning the status of the injured victims which is required under Penal Code section 409.3 and Health & Safety Code section 1798.6.  Flores did not consult with any of the paramedics, EMTs or anyone else regarding the care of the patients.  (Dkt. No. 35-3, Hutton Decl. ¶ 7; Dkt. No. 35-4, Mitchell Decl. ¶ 9.)  In fact, Flores testified that he did not know how many people were injured and that one person was lying down on either a gurney or backboard. (Dkt. No. 35-2, Luneau Decl., Ex. 3, Flores Depo. at 120:17-121:21.)  Also, witnesses stated that when Plaintiff asked Flores what he was going to do about the patients,

[14CV1749-GPC(DHB)]

Flores responded that "he did not care about the patients." (Dkt. No. 35-4, Mitchell Decl. ¶ 8; Dkt. No. 35-3, Hutton Decl. ¶ 7; Dkt. No. 35-2, Luneau Decl., Ex. 4 at 20-21.[5]) Plaintiff raises a trial issue of fact as to whether Flores' order was lawful.

In addition, Plaintiff argues that Flores was violating the very same code section that Defendant used to justify the arrest. He contends that Flores violated Penal Code section 148(a), which applies to EMTs, by delaying Plaintiff in discharging his duties, and Vehicle Code section 2801, which requires compliance with any order of a fireman. Cal. Veh. Code 2801.[6] By ordering that the fire truck be moved, Flores was refusing to comply with the firefighter's direction.

Plaintiff also disputes Flores' assessment of the scene of the accident that the ambulance which responded to treat the patients was parked out of traffic lanes, and therefore the fire trucks were not needed. Officer Colunga stated that the ambulance was parked outside of traffic lanes. (Dkt. No. 25-4, Colunga Decl. ¶ 6.) However, Captain David Albright testified that as he approached the scene, he spotted the ambulance and it was about 50% into the dirt shoulder and 50% into the No. 1 or fast lane. (Dkt. No. 35-2, Luneau Decl., Ex. 1, Albright Depo. at 64:2-65:2.) The fire truck was parked in the number one lane, behind the ambulance and provided a 25 foot safety zone between the front of the engine and the ambulance to protect EMS crew during patient packaging and loading. (Dkt. No. 35-2, Luneau Decl., Ex. 4 at 20.) This raises a genuine of material fact whether Flores's assessment concerning his decision to order the fire trucks removed was reasonable.

Lastly, Plaintiff creates a factual dispute as to Defendants' assertion that Plaintiff had no role in patient care. Gregoire states he was engaged in patient care when he was

---

[5]Page numbers are based on the CM/ECF pagination.

[6]California Vehicle Code section 2801 specifically states, "It is unlawful to wilfully fail or refuse to comply with any lawful order, signal, or direction of any member of any fire department, paid, volunteer, or company operated, when wearing the badge or insignia of a fireman and when in the course of his duties he is protecting the personnel and fire department equipment." Cal. Veh. Code § 2801.

[14CV1749-GPC(DHB)]

arrested by Flores; Plaintiff was standing and holding the flashlight over the gurney and the patient.  (Dkt. No. 35-2, Luneau Decl., Ex. 2, Gregoire Depo. at 66:10-13.)  Witnesses also confirmed that Plaintiff was involved in patient care.  Hutton and Mitchell were the first people on the scene of the accident.  Hutton was an off-duty EMT and stopped his car in the center divider and began C-spine care of the patient on the ground.  (Dkt. No. 35-3, Hutton Decl. ¶ 4.)  The patient was bleeding and it was dark, and the ground was wet and cold.  (Id.)

Plaintiff was rendering aid to the patient on the ground with other EMTs preparing the C-spine for transfer to the gurney.  (Id. ¶ 6.)  According to Hutton, Plaintiff was fully engaged in the care of the patient on the ground when a Latino CHP officer approached Plaintiff and arrested him and put him in handcuffs.  (Id. ¶ 6.)  The CHP officer never consulted with any firemen or EMTs about the status of the patient care before arresting Plaintiff.  (Id. ¶ 7.)  He heard Plaintiff tell the CHP officer "I am treating patients here" and the officer responded, "I don't care about your patients, you need to move."  (Id.)  The CHP officer ordered the fireman to take the truck back to the station.  (Id.)

Mitchell, who was in the same vehicle as Hutton, stated that when the CHP officer told the fireman to move the truck, the fireman was working on the injured patient at the time.  (Dkt. No. 35-4, Mitchell Decl. ¶ 5.)  The fireman was kneeling next to the patient and said, "I am in the middle of helping this patient."  (Id. ¶ 6.)  The CHP officer told him that he wanted him to stop caring for the patient and move the fire truck off the freeway and take it back to the station.  (Id. ¶ 7.)  The fireman replied "What about the patients?" and the CHP officer replied "I don't care about the patients, I just want you to leave."  (Id. ¶ 8.)  While she was there, she never heard the CHP officer ask about the condition of the patients or consult about how long or how many men were needed to help the two patients.  (Id. ¶ 9.)  The fireman was kneeling and preparing a backboard for the patient when the CHP officer approached and put the fireman in handcuffs.  (Id. ¶ 10.)

[14CV1749-GPC(DHB)]

Joshua Rees was also at the scene of the accident as a City of Chula Vista Firefighter/EMT. (Dkt. No. 35-5, Rees Decl. ¶ 3.) He arrived in the fire truck with Plaintiff. (Id.) They were working with paramedic units rendering care to two injured patients. (Id.) Plaintiff was working with paramedics to move the patient from the ground onto the gurney, using a backboard with straps. (Id.) Plaintiff was helping to move the patient by supplying the light with his flashlight, as it was dark, and securing the gurney in order to move the patient into the ambulance. (Id. ¶ 4.) While Plaintiff was in the process of rendering aid to the immobilized patient, a CHP officer called him. (Id. ¶ 5.) Rees did not hear the conversation but then saw Plaintiff stop caring for the patient and then being placed under arrest by the CHP officer. (Id.) According to Rees, the arrest delayed the entire movement of the patient from the scene to the hospital and delayed all fire equipment and personnel at the scene. (Id.) These facts raise a triable issue of fact whether Plaintiff was involved in patient care.[7]

In conclusion, the Court concludes that Plaintiff raises genuine issues of material fact as to whether Flores had probable cause to arrest Plaintiff for a violation of Penal Code section 148(a)(1) and Vehicle Code section 2800. Therefore, the Court DENIES Defendant Flores' motion for summary judgment on the unlawful arrest cause of action.

## C.    Qualified Immunity as to Defendant Flores

Next, Defendant Flores contends that he is entitled to qualified immunity for the unlawful arrest and excessive force causes of action because he reasonably concluded he was giving lawful orders under the circumstances he confronted, and no facts are alleged that a reasonable officer would have known that excessive force was being used. Plaintiff argues that the arrest was not reasonable and Plaintiff's right as an EMT

---

[7]Plaintiff also argues that CHP's authority to direct traffic pursuant to Vehicle Code section 2410 does not apply to fire trucks parked on a highway while engaged in rescue operations and that firefighters are exempt from nearly all Vehicle Code rules of the road. Defendants dispute Plaintiff's assertions. However, the Court need not address this issue because Plaintiff has raised sufficient facts to demonstrate that there are factual issues as to whether there was probable cause to arrest Plaintiff.

1  to be free from unlawful arrest while engaged in patient care in an emergency situation

2  is clearly established by statute. In addition, Plaintiff asserts that the facts are disputed

3  on the excessive force allegation.

4        Government officials who perform discretionary functions generally are entitled

5  to qualified immunity from liability for civil damages "insofar as their conduct does not

6  violate clearly established statutory or constitutional rights of which a reasonable

7  person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The

8  United States Supreme Court has presented a two-part analysis for determining

9  qualified immunity claims, which the court may address in any order. See Pearson v.

10  Callahan, 555 U.S. 223, 236 (2009). The doctrine of qualified immunity protects

11  government officials from liability for civil damages "unless a plaintiff pleads facts

12  showing (1) that the official violated a statutory or constitutional right, and (2) that the

13  right was 'clearly established' at the time of the challenged conduct." Ashcroft v.

14  al–Kidd, 563 U.S. 731, ——, 131 S.Ct. 2074, 2080 (2011).

15        Under the first prong, "the court determines whether the facts alleged, construed

16  in the light most favorable to the injured party, establish the violation of a

17  constitutional right." Dunn v. Castro, 621 F.3d 1196, 1200 (9th Cir. 2010) (citing

18  Saucier v. Katz, 533 U.S. 194, 201 (2001). As to the second prong, "the court decides

19  whether the right is clearly established such that a reasonable government official

20  would have known that 'his conduct was unlawful in the situation he confronted.'" Id.

21  at 1199 (quoting Saucier, 533 U.S. at 202). Requiring the alleged violation of law to

22  be "clearly established" "balances. . . the need to hold public officials accountable

23  when they exercise power irresponsibly and the need to shield officials from

24  harassment, distraction, and liability when they perform their duties reasonably."

25  Pearson, 555 U.S. at 231.

26        In the Ninth Circuit, a "district court should decide the issue of qualified

27  immunity as a matter of law when "the material, historical facts are not in dispute, and

28  the only disputes involve what inferences properly may be drawn from those historical

[14CV1749-GPC(DHB)]

facts." Conner v. Heiman, 672 F.3d 1126, 1131 (9th Cir. 2012) (quoting Peng v. Mei Chin Penghu, 335 F.3d 970, 979-80 (2003).

### 1.    Unlawful Arrest

"In the context of an unlawful arrest, then, the two prongs of the qualified immunity analysis can be summarized as: (1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." Rosenbaum v. Washoe Cnty., 663 F.3d 1071, 1076 (9th Cir. 2011) (citing Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (noting that an officer will not be entitled to qualified immunity "if officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause")).

In this case, as discussed above, the parties present different accounts concerning the factual circumstances surrounding Flores' arrest of Plaintiff.  Viewing the facts in the light most favorable to Plaintiff, Defendants have not demonstrated that there are no questions of fact whether the arrest was unlawful.  The Court is unable to assess whether qualified immunity applies because the material facts underlying Plaintiff's claim of unlawful arrest are disputed.  See Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) ("The County Defendants are not entitled to qualified immunity at this juncture as the record does not permit us to decide whether they violated clearly established law."); Espinosa v. City and County of San Francisco, 598 F.3d 528, 532 (9th Cir. 2010) ("In this case, the district court properly denied the summary judgment motion because there are genuine issues of fact regarding whether the officers violated [the plaintiff's] Fourth Amendment rights. Those unresolved issues of fact are also material to a proper determination of the reasonableness of the officers' belief in the legality of their actions."); Santos v. Gates, 287 F.3d 846, 855 n. 12 (9th Cir.2002) (finding it premature to decide whether the officer-defendants were entitled to qualified

immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom").

As such, the Court DENIES Defendant Flores' motion for summary judgment on the unlawful arrest claim based on qualified immunity.

**2.    Excessive Force**

The test for whether force was excessive is "objective reasonableness." Graham v. Connor, 490 U.S. 386, 398 (1989). Graham sets out a non-exhaustive list of factors for evaluating reasonability: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect actively resisted arrest or attempted to escape. Id. at 396. Because this inquiry is fact-sensitive, summary judgment should be granted sparingly. Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002). The "standard requires us to balance the amount of force applied against the need for that force." Deorle v. Rutherford, 272 F.3d 1272, 1279 (9th Cir. 2001). Moreover, where force is not needed, any force used is constitutionally unreasonable. Fontana v. Haskin, 262 F.3d 871, 880 (9th Cir. 2001); Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir.1998) ("Under the circumstances, the officers were not justified in using any force, and a reasonable officer thus would have recognized that the force used was excessive.")

The Fourth Amendment right to be free from the use of excessive force during an arrest is clearly established. Palmer v. Sanderson, 9 F.3d 1433, 1436 (9th Cir. 1993). "It is well-established that overly tight handcuffing can constitute excessive force." Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). The issue of tight handcuffing is usually fact-specific and usually turns on the credibility of the witnesses and is a question for the jury. LaLonde v. Cnty. of Riverside, 204 F.3d 947, 960 (9th Cir. 2000). The "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Here, it is undisputed that Flores placed handcuffs on Plaintiff's wrists and walked him back to Flores' patrol car. (Dkt. No. 35-1, SSUF No. 101.) According to Flores, in the course of searching Plaintiff and before placing him in the patrol car, Officer Flores doublelocked the handcuffs, which prevents the handcuffs from tightening. (Dkt. No. 35-1, SSUF Nos. 102, 103.)

In contrast, Gregoire testified that when he asked Flores to loosen the handcuffs, he tightened the handcuffs. (Dkt. No. 35-2, Luneau Decl., Ex. 2, Gregoire Depo. at 72:17-23.) Gregoire states that he made two requests to loosen the handcuffs. (Id. at 72:17-23; 74:14-18.) He states that when he asked Flores to loosen the handcuffs, Plaintiff said that they were extremely tight, he was not going anywhere and he was cooperating. (Dkt. No. 35-2, Luneau Decl., Ex. 4 at 22.) Plaintiff made a second request to loosen the handcuffs because they were making his wrists and his shoulders really hurt, but Flores did not respond. (Id.) Gregoire testified that he has not had any pain in the wrist area where the handcuffs were and he never sought any medical care from any type of medical provider for injuries that he attributes to the handcuffs. (Dkt. No. 35-2, Luneau Decl., Ex. 2, Gregoire Depo. at 75:24-76:2; 76:17-23.)

In looking at the factors laid out in Graham, the crimes allegedly violated, Penal Code section 148(a) and Vehicle Code section 2800(a), are not severe, Plaintiff did not pose an immediate threat to the safety of the officers, and Plaintiff willingly complied with Flores' direction to climb over the wall and go to him. The governmental interest was minimal; therefore, the amount of force used should have been minimal.

Based on Plaintiff's version of the facts, if Flores' arrest of Plaintiff was unlawful, use of handcuffs to effectuate his arrest can constitute excessive force. See Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004) (reversing the grant of summary judgment where the deputy violently arrested the plaintiff, handcuffing his hands tightly, even though there was no probable cause for arrest and the plaintiff was following the deputy's instructions); Devermont v. City of Santa Monica, No. CV 12-

6772 DDP(MRWx), 2014 WL 2969629, at *5 (C.D. Cal. July 1, 2014) (even if defendant used normal handcuffing procedures, the use of handcuffs was excessive if there was no probable cause for the arrest).  Moreover, the fact that Plaintiff requested that the handcuffs be loosened because they were tight, and Flores did not loosen them during the 30 minutes Plaintiff was handcuffed, creates a genuine issue of fact whether the only reasonable conclusion that the evidence permits is that the force used was reasonable.  See Dillman v. Vasquez, No. 13cv404-LJO, SKO, 2015 WL 881574, at *12 (E.D. Cal. Mar. 2, 2015) (plaintiffs allegation that he made numerous requests for defendant to loosen the handcuffs yet defendant refused to loosen them for at least 20 to 30 minutes created an issue for the jury).

Plaintiff has raised an issue of fact whether handcuffing, by itself, was warranted since there may not have been probable cause to arrest him.  In addition, there is an issue of fact whether Plaintiff's request to loosen the handcuffs two times and Flores responded by either tightening the handcuffs and/or not responding constitutes excessive force.  Therefore, the Court cannot determine whether Flores' belief as to the legality of his actions was reasonable.  Thus, the Court DENIES Defendant Flores' motion for summary judgment on the excessive force claim based on qualified immunity.

**D.      State Law Causes of Action as to Defendants Flores and the CHP**

The complaint alleges state causes of action against Defendant Flores and Defendant CHP for violation of California Civil Code section 52.1, battery, false imprisonment, and intentional infliction of emotional distress.  (Dkt. No. 1-1, Compl.)  CHP is a defendant based on the theory of respondeat superior pursuant to California Government Code section 815.2.  (Id.)

**1.      California Civil Code section 52.1**

Defendant summarily argues that since the California Civil Code section 52.1 claim is based solely on an alleged violation of the Fourth Amendment's prohibition against unreasonable arrests, then this cause of action fails since it has demonstrated

that Flores had probable cause to arrest Plaintiff. Plaintiff also conclusorily opposes contending that Flores violated Civil Code section 52.1 because Flores did not have probable cause to arrest Plaintiff.

California Civil Code section 52.1 establishes a private right of action for damages and other relief against a person who "interferes by threats, intimidation, or coercion," or attempts to so interfere, "with the exercise or enjoyment" of an individual's constitutional or other legal right. Cal. Civ. Code § 52.1.

Plaintiff's cause of action under Civil Code section 52.1 is premised on a violation of the Fourth Amendment to be free from arrest without probable cause. (Dkt. No. 1-1, Compl. at 15.) Since the Court DENIES Defendants' motion for summary judgment on the claim of unlawful arrest, the Court DENIES Defendants' motion for summary judgment on the cause of action under California Civil Code section 52.1 for the same reasons.

**2.  Battery**

Defendants argue that the facts demonstrate that no excessive force was used against Plaintiff. Plaintiff argues that the facts are disputed and the question should go to a jury.

"The elements of civil battery are: (1) defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to plaintiff." Brown v. Ransweiler, 171 Cal. App. 4th 516, 526-27 (2009). "A state law battery claim is a counterpart to a federal claim of excessive use of force. In both, a plaintiff must prove that the peace officer's use of force was unreasonable." Id. at 527.

Since the Court found that there are genuine issues of disputed material facts on the excessive force cause of action, similarly, this conclusion applies to the state law cause of action for battery. See id. Accordingly, the Court DENIES Defendants' motion for summary judgment on the battery claim.

### 3.   False Imprisonment

Defendants assert that since they demonstrated that there was probable cause to arrest Plaintiff, the false imprisonment claim fails.  Plaintiff disagrees.

In California, false arrest and false imprisonment are not separate torts.  <u>Collins v. City and Cnty. of San Francisco</u>, 50 Cal. App. 3d 671, 673 (1975).  "False arrest is but one way of committing a false imprisonment, and they are distinguishable only in terminology."  <u>Id.</u>  The probable cause standard for unlawful arrest in California is similar to the federal standard. <u>See</u> <u>People v. Campa</u>, 36 Cal. 3d 870, 878 (1984); <u>Ferganchick v. United States</u>, 374 F.2d 559, 560 (9th Cir. 1967).

Defendant Flores contends he had lawful privilege under California Penal Code sections 836(a) and 847(b).  Section 836(a) allows a peace officer to arrest a person without a warrant if the officer has probable cause to believe that the person to be arrested committed a public offense in the officer's presence.  Cal. Penal Code § 836(a).  Section 847(b) precludes liability against a peace officer for false arrest or false imprisonment arising out of a lawful arrest.  Cal. Penal Code § 847(b).

Since the basis of the false imprisonment argument is that Flores had probable cause to believe the arrest was lawful, and the Court concluded there are genuine issues of fact as to whether the Plaintiff's arrest was lawful, the Court DENIES Defendants' motion for summary judgment on the false imprisonment cause of action.

### 4.   Intentional Infliction of Emotional Distress

Defendants argue that Flores did not engage in outrageous conduct but had substantial grounds for believing he had probable cause to arrest Plaintiff and was not aware that Plaintiff was encountering pain from the handcuffs.  Plaintiff opposes.

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  <u>Hughes</u>

[14CV1749-GPC(DHB)]

1  v. Pair, 46 Cal. 4th 1035, 1050 (2009) (quoting Potter v. Firestone Tire & Rubber Co.,

2  6 Cal. 4th 965, 1001 (1993)); see also Christensen v. Superior Court, 54 Cal. 3d 868,

3  903 (1991). "A defendant's conduct is 'outrageous' [only] when it is so 'extreme as

4  to exceed all bound of that [which is] usually tolerated in a civilized community.'"

5  Hughes, 46 Cal. 4th at 1050–51 (quoting Potter, 6 Cal. 4th at 1001). "Severe emotional

6  distress means emotional distress of such substantial . . . or enduring quality that no

7  reasonable [person] in civilized society should be expected to endure it." Id. at 1051

8  (quoting Potter, 6 Cal. 4th at 1004). The California Supreme Court has set a "high bar"

9  to demonstrate severe emotional distress. Id. Suffering discomfort, worry, anxiety, an

10  upset stomach, concern and agitation do not constitute emotional distress. Id.

11      The complaint alleges that the conduct surrounding the alleged unlawful arrest

12  and excessive force constitute outrageous conduct with an intent to cause emotional

13  distress and Plaintiff suffered severe emotional distress as a result of Flores' conduct.

14  (Dkt. No. 1-1, Compl. at 16.) Plaintiff alleges that Defendant CHP is liable pursuant

15  to California Government Code section 815.2.

16      Defendants assert that the facts in the case do not demonstrate extreme and

17  outrageous conduct. Flores had grounds to believe he had probable cause to arrest

18  Plaintiff and cites to paragraphs in the SSUF in support. In addition, as to excessive

19  force, Plaintiff never told Flores he was encountering pain from the handcuffs and did

20  not suffer any physical injuries. Plaintiff only stated that the handcuffs were too tight

21  and he remained in them for about 30 minutes.

22      In response, Plaintiff only presents the declaration of Rees, the other EMT on the

23  scene with Plaintiff ,who described Flores' action as "shocking" and the patient, at the

24  accident scene, stated "Are you going to fucking leave me here? Are you?" (Dkt. No.

25  35-5, Rees Decl. ¶¶ 6, 7.) However, these facts alone do not dispute Defendants' facts

26  as whether Flores' conduct was outrageous "with the intention of causing, or reckless

27  disregard of the probability of causing, emotional distress" or whether plaintiff suffered

28  severe or extreme emotional distress or whether there was actual or proximate cause.

The reaction of the patient or of the other EMT on the scene does not demonstrate Plaintiff's emotional state. Plaintiff has not presented any facts to demonstrate the elements of intentional infliction of emotional distress.

Accordingly, the Court concludes that Plaintiff has failed to create a genuine issue of material fact regarding whether the facts surrounding Flores' alleged unlawful arrest and alleged excessive force support a claim for intentional infliction of emotional distress, and GRANTS Defendants' motion for summary judgment on this issue.

As to the Defendant CHP, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). California's liability on state entities is based on the doctrine of respondeat superior for the acts of its employees. Robinson v. Solano Cnty., 278 F.3d 1007, 1016 (9th Cir. 2002); A.D. v. State of California Highway Patrol., No. C 07-5483 SI, 2009 WL 733872, at *9 (N.D. Cal. Mar. 17, 2009) (public entity is not vicariously liable under state law if its employee is not liable).

In this case, since the Court GRANTS Defendants' motion for summary judgment on this claim as to Flores, and the CHP's liability is based on respondeat superior, the Court also GRANTS Defendants' motion for summary judgment on this claim as to Defendant CHP. See id.

**E.    Evidentiary Objections**

Defendants filed objections to Plaintiff's evidence. (Dkt. No. 42-1.) The Court notes the objections. To the extent that the evidence is proper under the Federal Rules of Evidence, the Court considered the evidence. To the extent that the evidence is not proper, the Court did not consider it.

**Conclusion**

Based on the above, the Court GRANTS in part and DENIES in part Defendants' motion for summary judgment. Specifically, the Court GRANTS Defendants' motion

[14CV1749-GPC(DHB)]

for summary judgment on the cause of action for intentional infliction of emotional distress, and DENIES Defendants' motion for summary judgment on the remaining causes of action.  The hearing date set for **February 19, 2016** shall be vacated.

IT IS SO ORDERED.

DATED:  February 16, 2016

HON. GONZALO P. CURIEL
United States District Judge

[14CV1749-GPC(DHB)]